[Civ. No. 15936. Second Dist., Div. One. Dec. 23, 1947.]

WILLIAM H. BAKER, Respondent, v. SLAVKO KALE
et al., Appellants.

John J. Karmelich and Charles Kent for Appellants.

Goudge, Robinson & Hughes, Edgar F. Hughes and Raymond Tremaine for Respondent.

BARTLETT, J. pro tem.—Complaint contains three causes of action: the first cause of action was one to quiet title to plaintiff's leasehold estate; the second for declaratory relief and for an injunction to restrain defendants from remodelling the property of a building leased by plaintiff; and the third for damages for the sum of $2,000 for slander of plaintiff's title. The judgment was in favor of the plaintiff as to all three causes of action. However, on this appeal we are only concerned with the third cause of action as appellant's opening brief starts with the statement that the appeal is taken solely against the third cause of action.

Appellant urges a reversal as to the third cause of action on the ground (1) that the court erred in denying a motion for a nonsuit and, (2) that appellant's statements were privileged.

This brings us to an examination of the record as it was at the time the motion for a nonsuit was made. If there is sufficient evidence of a substantial nature to justify a finding for the plaintiff, then the motion for a nonsuit must be denied. In considering this question, the evidence must be viewed from a standpoint most favorable to the plaintiff and conflicts disregarded (*Milana* v. *Credit Dis. Co.*, 27 Cal.2d 335 [163 P.2d 869, 165 A.L.R. 621]). With this in mind, the testimony showed the following: Plaintiff was the owner of a lease on premises known as the Palace Barber Shop, together with a shoeshine stand in front, located at 211½ East 6th Street in San Pedro, California. The lease was dated March 7, 1944, and was between B. F. Bowman as lessor and plaintiff as lessess. The terms of the lease were ''for the term of Two years, with an option for three years more, commencing on the 15th day of March, 1944, and ending on the 15th day of March, 1946, at the total rental of TWELVE HUNDRED TWENTY FOUR AND No/100 Dollars, Payable at San Pedro,

California, in installments of FIFTY ONE AND No/100 - - - dollars, lawful money of the United States, each due and payable in advance on the 15th day of each and every month during said term for first two years, then a three-year option commencing March 15th, 1946 and ending March 15th, 1949, at a total rental of TWENTY ONE HUNDRED NINETY SIX AND No/100 DOLLARS ($2196.00) payable in installments of $61.00 per month on the 15th of each and every month during the balance of said term.''

There was a covenant in the lease against the assignment or subletting of any portion of the premises, but this provision was rescinded in writing by Bowman and the plaintiff on October 13, 1944. On February 5, 1946, appellants notified respondent that they had acquired the property on which the barber shop was located and that the lease would terminate on March 15, 1946. On the same date respondent notified appellants that he exercised his option to renew the lease for three years.

On February 13, 1946, respondent entered into a contract with one A. A. Birchfield selling the lease-hold interest to him for $4,000, $2,000 down and the balance to be paid in 60 days. As Birchfield was informed by respondent of appellants' notice of February 5, 1946, Birchfield had inserted in the contract a proviso that the purchaser was to be satisfied that the option to extend the lease had been legally exercised and was binding on the lessor. Birchfield entered into possession of the barber shop on the same day.

While occupying the premises, Birchfield had conversations with appellants who told him that he, Birchfield, had no lease and that appellants would put a fence or gate across the place. Appellants stated they would take Baker or him to court if he did not turn the premises over to appellants. Upon being offered the rent by Birchfield on several occasions, appellants refused to accept it. Birchfield testified that he did not want to buy a lawsuit and told appellants that he wanted to get his money back. He went to respondent and told him that he wanted his money back and respondent returned it to him. Birchfield then cancelled the contract with respondent and vacated the premises about April 15, 1946.

The respondent then tried to sell the lease and equipment to others and listed it with four real estate brokers. The only offer he received was on June 1, 1946, from a Mr. Buzolich in the sum of $2,000. He continued his efforts to sell the prop-

erty until July 29, 1946, but, receiving no better offer by that time, sold it for $2,000.

Patrick S. Doney, a licensed business opportunity broker, testified that the value of the lease had dropped from $4,000 to a present valuation of $2,000.

Appellant in his opening brief, among other things, listed as "undisputed" that the lease of March 7, 1944 was a valid lease; that the option provision to renew the lease for three years from March 15, 1946 was valid; that prior to March 15, 1946, respondent exercised his option to renew the lease for three years and that this renewal of the lease was valid.

A consideration of this record raises two questions: (1) Assuming that the contract between Birchfield and respondent was binding, will an action lie for inducing breach of contract by a resort to means in themselves unlawful such as slander? And, (2) was there a binding contract between Birchfield and respondent? If the first question is answered yes, then, from the evidence, the motion for a nonsuit would have to be denied; if the second question is answered no, it would be equally imperative that the motion for a nonsuit be denied.

Appellants base their contention that the nonsuit should not be granted upon the theory that "[a] land owner who has effected a binding contract of sale with another cannot maintain slander of title against a third person whose utterances have induced the purchaser to refuse to carry out the contract, the owner's remedy being against the purchaser for breach of the contract." (16 Cal.Jur. 160.) In behalf of their contention, they rely upon the case of *Burkett* v. *Griffith*, 90 Cal. 532 [27 P. 527, 25 Am.St.Rep. 151, 13 L.R.A. 707].

It is fair to state that while the facts in *Burkett* v. *Griffith*, *supra*, are in no way parallel with those in the case at bar, as an abstract question of law the court does make a holding in accordance with the quoted statement from California Jurisprudence. However, in cases such as are disclosed by the testimony in the instant case, such is not the law in this state today. From the evidence it is inescapable that appellant, by every means in his power, including slander and threats, attempted to induce A. A. Birchfield to breach or withdraw from any contract he had with respondent. The rule in such cases is clearly and unequivocally set forth in *Imperial Ice Co.* v. *Rossier*, 18 Cal.2d 33 [112

P.2d 631], on page 35, as follows: "It is universally recognized that an action will lie for inducing breach of contract by a resort to means in themselves unlawful such as libel, slander, fraud, physical violence, or threats of such action. (See cases cited in 24 Cal.L.Rev. 208; 84 A.L.R. 67.)"

The correct definition of a tort such as the one here is defined in *Gudger* v. *Manton*, 21 Cal.2d 537, 541 [134 P.2d 217], as follows:

"The judgment here under attack rests upon the theory of a slander by appellant of the title of plaintiff's property, or more accurately the wrongful disparagement of plaintiff's title hereto to his injury. At the outset it is helpful to have before us an accurate definition of that tort. It may be best stated as follows: 'One who, without a privilege to do so, publishes matter which is untrue and disparaging to another's property in land, chattels or intangible things under such circumstances as would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other from the impairment of vendibility thus caused.' (Rest. Torts, § 624.)" Later on in the same decision, the court, in referring specifically to the case of *Burkett* v. *Griffith, supra,* makes this statement: "Further, it seemed persuaded that where a binding contract exists between the purchaser and plaintiff, and the disparaging matter induced the purchaser to breach his contract rather than preventing him from agreeing to purchase, the plaintiff had an adequate remedy against the purchaser. That reasoning is no longer valid inasmuch as an action will lie for inducing the breach of a contract by a resort to unlawful means such as libel or slander. (See *Imperial Ice Co.* v. *Rossier, supra*)." From all this we conclude that the answer to the first question suggested is yes.

■ In answering the second question, we come to a consideration of the contract between respondent and A. A. Birchfield. The contract provided that Birchfield was to purchase the property and make his final payment to respondent "within sixty days from the date of delivery to him of title to the property and business, provided that second party, Birchfield, is then satisfied that the option to extend the lease has been legally exercised and is binding upon the lessor." As to whether or not A. A. Birchfield was satisfied was clearly a case where the exercise of judgment was involved. It is

the general rule in cases where fancy, taste or judgment is involved, that it is sufficient to show, in the absence of bad faith, that the party was in fact dissatisfied. The class of cases in which dissatisfaction is no defense are those where the question is merely one of operative fitness or mechanical utility (*Brenner* v. *Redlick Furn. Co.*, 113 Cal.App. 343 [298 P. 62]; *Coats* v. *General Motors Corp.*, 3 Cal.App.2d 340 [39 P.2d 838]; *Tiffany* v. *Pacific Sewer Pipe Co.*, 180 Cal. 700 [182 P. 428, 6 A.L.R. 1493]; 6 Cal.Jur. 417). That the appellant recognized this rule is evidenced by the statement in his brief, "At the time Birchfield exercised his power to withdraw he was satisfied that the extension was valid." If we view the evidence in the light most favorable to the respondent, as we must, this contention cannot be upheld.

The respondent had frankly told A. A. Birchfield, at the inception of the deal, of the notice from appellants of February 5, 1946. The testimony shows that on account of that A. A. Birchfield had this particular language inserted in the contract. He wanted protection in just such an eventuality as arose. When Birchfield tendered payment of the rent, it was refused. He was told by appellant that he had no lease; that if he continued to stay there, appellant would sue him; that he would build a wall in front of the barber shop. It is evident that these statements and threats, made so positively, would tend not to satisfy him of the validity of his title. That this is so is further shown by the evidence that A. A. Birchfield asked appellants if they would release it to him, and, upon appellants' refusal, even offered them a small bonus to do so. On cross-examination, Birchfield stated that his reason for not going ahead was that he did not want to buy any lawsuits. When asked if that was his only reason, he said, "That is my only reason; *if* the lease had been good my money was up." When appellant Kale told Birchfield that he had no lease, Birchfield said, "Well, I merely asked him—he said, 'I am the landlord.' He said, 'You know you do not have a lease after I have bought this place.' I said, 'I don't know whether I have or not.' He said, 'What are you going to do about it?' I said, 'I cannot lose my money.' And I called Mr. Baker and told him that he had better be there at the expiration of the 60 days. But he did clarify that, that he would not o. k. that lease, and that is why I called Mr. Baker." This testimony certainly indicates a lack of satisfaction on his part.

█ We come to the conclusion, therefore, that whatever view we take of the contract between respondent and Birchfield, in view of the testimony before the court, it should have denied the motion for a nonsuit.

█ The appellants also urge that the statements by appellants to Birchfield were privileged. They state their argument on this phase of the matter by setting out the following quotation from *Gudger* v. *Manton, supra,* as follows: "A rival claimant of property is conditionally privileged to disparage or justified in disparaging another's property in land by an honest and good faith assertion of an inconsistent legally protected interest in himself." We fail to see how this helps him. The quotation shows that the privilege is conditional on an honest and good faith assertion. The preceding paragraph of the decision shows that the privilege invoked was that found in 47(3) of the Civil Code, which refers in all instances to communications made without malice. Appellants answer this by contending that the statements were in fact made in good faith and without malice. In the case before us it was pleaded and specifically found by the court, who had the parties and witnesses before it and had an opportunity to note their demeanor and attitude, that appellants' statements were not made in good faith, and were, in fact, malicious.

We have, heretofore, set forth the facts concerning these statements, and it would serve no good purpose to repeat them here. In his talks with respondent, appellant Kale gave no reason as to why he wanted to break the lease, except that he desired to have the premises occupied by the barber shop for a saloon or restaurant. He made no statement as to what would make the lease invalid. In fact, when this suit was brought to test its legality, he admitted in his answer that it was valid. His statements were reckless and coupled with threats to put a wall in front of the barber shop, and so on.

The court's findings of malice and lack of good faith were justified by the evidence, and hence there was no privilege.

The judgment is affirmed.

White, J., concurred.

Doran, Acting P. J., dissented.