## GRUEN WATCH CO. v. ARTISTS ALLIANCE, Inc., et al.

### No. 9919.

United States District Court
S. D. California, Central Division.

Feb. 27, 1950.

Gibson, Dunn & Crutcher, Henry F. Prince, Frederic H. Sturdy, Richard E. Davis, Los Angeles, Cal., Taft, Stettinius & Hollister, Cincinnati, Ohio, for plaintiff.

Mitchell, Silberberg & Knupp, Los Angeles, Cal., for Artists Alliance et al.

Low & Stone, Los Angeles, Cal., for Bulova Watch Co., Inc.

YANKWICH, District Judge.

The various motions of the defendants, heretofore submitted, are now decided as follows:

(1) The motion of the defendants Artists Alliance, Inc., Lester Cowan, and Lester Cowan, doing business as Lester Cowan Productions, to dismiss the second amended and supplemental complaint as to them, is hereby granted.

(2) The motion of the same defendants to strike certain portions from the second amended and supplemental complaint is granted.

(3) The motion of the defendant Bulova Watch Company, Inc., to dismiss the complaint as to them is granted.

Formal order dismissing said complaint to follow.

Costs to the defendants.

## I.  The Pleadings.

Action by the plaintiff to recover general damages in the sum of $100,000.00 and punitive damages in an equal sum and seeking injunction. The defendants have moved to dismiss and to strike portions of the amended and supplemental complaint.

The basis for asserted liability against the defendant Cowan is that, contrary to the agreement, to be referred to hereinafter, they appropriated an advertising display made by the plaintiff to be used in a motion picture to be made by Cowan, and placed the name of Bulova on it and used it in the picture with the Bulova name. The amended complaint avers that, in anticipation of use of the plaintiff's name, Cowan released advertising material indicating such use.

Bulova is charged with inducing Cowan to disregard its obligations under the agreement and to replace their name by its name and use the plaintiff's property for their benefit, without authorization and in violation of its undertaking.

By such action, it is claimed, the plaintiff (1) lost valuable advertising which it would have received from the use of its name, (2) was and will be subjected to ridicule by the trade through use of its display under the Bulova name and (3) was injured by the mutilation of the design.

## II.  The Applicable Law As To Cowan.

Try as I might, I cannot see any foundation of liability in the second amended and supplemental complaint. By postulating ambiguity in the contract of June 22, 1948, and by supplying additional facts both anterior and posterior to its execution, plaintiffs think that they have overcome the deficiencies of the amended complaint dismissed on October 7, 1949. In this I think they are mistaken.

The essential part of the memorandum agreement, signed by the plaintiff's representative and the defendants and dated June 22, 1948, is contained in Paragraphs 3 and 4 of the same, which read:

"You understand that some expense will be incurred by me or my principals in preparing for your use the above specified advertisements or displays. On behalf of my respective principals I am privileged to state that the cost of constructing such signs and displays which will be borne by my respective principals provided that their respective advertising signs and displays are included in the final version of your picture as released to the general public; and further provided that such picture is actually released to the general public not later than January 1, 1950.

"It is therefore understood and agreed that you will bear the cost incurred in connection with the construction and erection of any or all of such signs or displays which are not actually included in the picture substantially in the manner presently represented to you; it being further understood that you will bear the cost of all of such signs and displays if the said picture is not released to the general public prior to January 1, 1950. At your request, of course, we shall furnish you with an itemized statement of all costs so incurred."

These clauses mean that, in view of the fact that certain advertising signs required special outlays of moneys in their construction, Kline's principals,—the plaintiff among them,—will bear the cost of construction, provided that they are included in the "final version" of the picture. If

not, the only penalty is that the defendants will "bear the cost incurred in connection with the construction and erection" of the "signs and displays." By these undertakings the parties have laid down the conditions of liability. And no atomizing of the phraseology or expository references to "intentions", "undertakings" or "agreements" can destroy the binding finality of the simple, unequivocal obligation contained in the two paragraphs mentioned.

The circumstances under which courts will allow prior negotiations to be gone into in explanation of the terms of an agreement or permit subsequent conduct to become a criterion of contemporaneous interpretation are well known. While sitting on the Court of Appeals recently, I had occasion to write for the Court an opinion which states rather elaborately the law of California on this subject. Pacific Portland Cement Co. v. Food Machinery and Chemical Corporation, 9 Cir., 1949, 178 F.2d 541. And see, Barham v. Barham, 1949, 33 Cal.2d 416, 202 P.2d 289.

Absent any ambiguity, the argument derived by analogy from the law of options and by which it is sought to construe certain subsequent acts of the defendants as an irrevocable exercise of choice, loses all significance. In an option, a binding contract arises when the optionee exercises the right under the option. Until such time, the contract is open. And because of the unilateral character of the option contract, California courts are very strict in holding the optionee to the binding effect of any acts on his part which amount to the exercise of his rights. Once he has done so, they do not allow him to change his position to the detriment of the optioner. See, Bard v. Kent, 1942, 19 Cal.2d 449, 122 P.2d 8, 139 A.L.R. 1032; Spaulding v. Yovino-Young, 1947, 30 Cal.2d 138, 180 P.2d 691; Warner Bros. Pictures, Inc. v. Brodel, 1948, 31 Cal.2d 766, 772–773, 192 P.2d 949, 3 A.L.R.2d 691; MacDonald v. Rosenfeld, 1948, 83 Cal.App.2d 221, 237, 188 P.2d 519; Baker v. Kale, 1947, 83 Cal.App.2d 89, 92–93, 189 P.2d 57. And, if necessary, the courts will, in applying these principles, invoke the doctrine of estoppel. But, even in option cases, the acts on the part of the optionee must be such that the court can see in them evidence "of the continuance of such mutuality of obligation." Spaulding v. Yovino-Young, supra, 30 Cal.2d at page 142, 180 P.2d at page 693. Otherwise, there is no legal basis for carrying over the option agreement into a different relationship than that envisaged by the contract. Strictly speaking, we are not confronted here with an option,—i. e., with a contract which gave the optionee "a right against the optionor for performance of the contract to which the option relates upon the exercise of the option". Warner Bros. Pictures v. Brodel, supra, 31 Cal.2d at page 773, 192 P.2d at page 952. The undertaking on the part of the representative of the plaintiff was that they would construct certain advertising displays or lay-outs,—to use the newspaper phrase,—and that, if Cowan incorporated them in their "final" picture, the cost would be borne by the advertiser. If not, the cost was to borne by Cowan. The first line in Paragraph 3 recites that expenses are to be incurred "*in preparing for your use,*" the advertisements and displays. So it seems to me that the inescapable conclusion is that stated in the prior memorandum which summed up the agreement in the two sentences: "The only penalty for not using the display is liability for price. * * * Cowan was free to do what he pleased with the property if he paid for it."

Granted that if the parties themselves had not provided the penalty for failure to use the advertising displays in the form in which they were, i. e., *with the name of the plaintiff on it,* the plaintiff might seek damages upon one of the several theories propounded by them in defense of the present complaint, the obvious answer is that the parties made different provision. And the plaintiff, after having entered into a contract which recites that, because certain advertising set-ups required the expenditure of money, if they were used in a manner *beneficial* to the plaintiff, Cowan would not have to pay for them, but if they were not, Cowan would pay for them,—he is not free to insist now that he is entitled, on some general princi-

ples, to sue for defamation of goods, or injury to the prospective good will, which would have come to him, had the advertising set-up been used with his name on it. The letters written subsequent to the execution of the contract did not alter the situation. Cowan had complete freedom of action, as between the two methods of benefiting from the contract, up to and including the actual incorporation and use of the set-up in the "final version" of the picture. Only the earnestness of counsel and their insistence that the additional facts of the second amended and supplemental complaint overcome the deficiencies of the amended complaint have led me to elaborate on the matter. I am of the view now,—as I was at the time the prior decision was made,—despite the leave to amend then granted,—that the contract under consideration cannot be made the foundation of any liability of the type which plaintiff seeks to establish. For this reason, the additional allegations add no issuable facts and the present complaint, stripped of these additional allegations, which seek to change the tenor of the agreement, does not and cannot be made to state a claim against the defendants Cowan.

### III. No Willful Interference By Bulova.

What has just been said applies also to Bulova's motion to dismiss. At the present time, the law in California permits an action against a third party for willful interference with a contractual relation. See, Restatement, Torts, Sec. 768 (2); Katz v. Kapper, 1935, 7 Cal.App.2d 1, 44 P.2d 1060; Imperial Ice Co. v. Rossier, 1941, 18 Cal.2d 33, 112 P.2d 631; Baker v. Kale, supra, 83 Cal.App.2d pages 92–93, 189 P.2d 57; Romano v. Wilbur Ellis & Co., 1947, 82 Cal.App.2d 670, 186 P.2d 1012. But the essential condition of liability is the inducement of *a breach of contract*. Under the contract, as I interpret it, Cowan, when he determined not to use the advertising layout in the form proposed, i. e., *with the name of the plaintiff on it,* incurred only one liability,—i. e., to pay for it. He would have incurred the same liability if, after including it in the "final"

version of the picture, it had not been released prior to January 1, 1950.

So, here again, the only consequence of the non-user being stipulated in the contract, and being *the cost* of the layout, assuming that Bulova induced Cowan not to use the layout with the name of the plaintiff on it,—we cannot fasten liability on Bulova on a theory of tortious interfering with a contractual relation. For, if, as we hold, the agreement called for the construction of this layout for Cowan's use, and its non-use with the plaintiff's name on it called, as the only penalty, liability for its cost,—a different liability cannot be thrust upon either Cowan or Bulova because Cowan, having paid for the layout, was, as stated in the prior memorandum, "free to do what he pleased with it." And if Bulova induced him to do what he had the legal right to do, no liability can flow from the act. See, Sweeley v. Gordon, 1941, 47 Cal.App.2d 385, 118 P.2d 16, 842; Lynch v. Rheinschild, 1948, 86 Cal.App.2d 672, 676, 195 P.2d 448; Orloff v. Metropolitan Trust Co., 1941, 17 Cal.2d 484, 487–489, 110 P.2d 396.

Hence the rulings above made.