[S. F. No. 17280. In Bank. May 21, 1947.]

BRYAN J. SPAULDING et al., Appellants, v. JOSEPH J. YOVINO-YOUNG et al., Respondents.

Charles A. Christin and Everett H. Roan for Appellants.

Young, Ryan & Whitton, Rupert R. Ryan and Albert K. Whitton for Respondents.

SPENCE, J.—This is an action for specific performance of an option to purchase agreement contained in a written lease of certain real property. The trial court found that the option was not exercised within the time of its life and accordingly rendered judgment for defendants. From that judgment and an order denying a motion for a new trial, plaintiffs appeal.

The construction to be placed upon the several clauses of the lease definitive of the rights of the parties thereto is the sole issue in controversy. Plaintiffs contend that the "hold-over" provision, allowing their month-to-month tenancy of the premises after the expiration of the term of the lease, operated to extend their option to purchase the property for a correlated period. Defendants object to this interpretation upon the ground that it would give an unwarranted scope to the language employed by the parties to express their under-

standing, inconsistent with both practical and legal considerations. An analysis of the pertinent portions of the lease conforms with the trial court's views in line with defendants' position and its consequent decision in defendants' favor.

The facts are simple and not in dispute. Defendants, as lessors, and plaintiffs, as lessees, executed a two-year written lease covering certain residential property in Oakland for the period commencing March 7, 1941, and ending March 6, 1943. The total rent stipulated was $840, payable in monthly installments of $35 per month on the 7th day of each and every month. It was further provided: "Should the parties of the second part [plaintiffs herein] hold over the term herein created, such tenancy shall be from month to month only, and be on the same terms and conditions as herein stated." The lease, in addition to being in the conventional form for the demise of real property, also contained the following option for purchase of the premises by the lessees: "It is further understood and agreed as part of the consideration for this lease, Lessors hereby give to the Lessees the option to purchase the real property herein leased for the sum of Thirty-five Hundred and Fifty ($3550.00) Dollars, in lawful money of the United States, provided, however, that said Lessees shall have paid all of the rental due up to the time of the exercise of said option; upon the execution of the necessary documents in connection therewith and the consummation of said sale, this lease shall cease and determine; said purchase price may be payable in cash, or as follows: Cash payment of Three Hundred and Fifty ($350.00) Dollars, upon which will be credited the total amount of rental paid to the date said option is exercised, after deduction, however, from said rental paid of" certain enumerated items as insurance and taxes "expended by Lessors" and "it being understood that the required monthly payments on the balance shall not exceed Thirty-five ($35.00) Dollars per month, including interest at six (6%) per cent per annum on the monthly decreasing balances."

Plaintiffs made the monthly rental payments of $35 to a real estate agent who received a commission for procuring the lease, and who also was to receive a commission in the event of the sale of the property. After the expiration of the lease term on March 6, 1943, plaintiffs continued in possession and continued to pay the monthly rental under their "hold-over" arrangements with defendants. On October 7,

1943, plaintiffs first made known their election to exercise the option through the agent who had been collecting the rents and tendered to defendants the sum of $224.89, this amount apparently having been computed in accordance with provisions of the option. Defendants refused to accept this payment and rejected the tender upon the ground that the time within which the option could be exercised had lapsed with the expiration of the two-year period of the lease. Plaintiffs then brought this action for specific performance.

The propriety of defendants' position stems from the following considerations. Under the language of the lease, the privilege of "holding-over" possession of the property on a "month-to-month only" basis and the option given to purchase the property conferred separate and distinct rights and powers upon plaintiffs. The first stipulation had reference to a continuance of the tenancy; the second stipulation empowered the lessees to terminate the tenancy and to become the absolute owners of the property. The latter privilege, though commonly found in a lease (35 C. J. 1038, § 181), is not an essential covenant thereof, nor is it a term or condition of the demise. Thus, in the absence of a provision making the exercise of the option to purchase personal to the lessee (*Prichard* v. *Kimball*, 190 Cal. 757, 764 [214 P. 863]), such option may be separated from the lease and transferred by the lessee independently of the leasehold interest. (*Mott* v. *Cline*, 200 Cal. 434, 450 [253 P. 718].)

It is uniformly held that the general consideration of the lease, such as the covenant to pay rent or do other acts, supports the option to purchase as well as the right to occupy the premises. (*Gordon* v. *Dufresne*, 205 Cal. 512, 514 [271 P. 1066]; *Cates* v. *McNeil*, 169 Cal. 697, 703-704 [147 P. 944]; 35 C.J. 1038-1039, § 182.) But it does not follow that all such rights and obligations exist beyond the fixed term of the lease. Here the fixed term created by the lease was specified as two years, and the lessor-lessee relationship as such terminated at the expiration of that period. The continued occupancy of the property thereafter by plaintiffs was regulated by the "hold-over" provision of the lease, which provision contemplated a landlord-tenant relationship as distinguished from the lessor-lessee relationship as such. The provision in the "hold-over" clause that the month-to-month tenancy was to be "on the same terms and conditions" as stated in the lease does not avail

plaintiffs, for continued occupancy of the property on that basis by the former lessees was no more than the law would imply in the absence of such "hold-over" clause. (Civ. Code, § 1945; *Vucinich* v. *Gordon,* 51 Cal.App.2d 434, 436 [124 P.2d 868].) Upon the expiration of the two-year lease period, plaintiffs were no longer bound to hold the premises and pay rent for a definite term in exchange for the right of occupancy and the option to purchase the property, which option was expressly defined as "part of the consideration for this lease." (Rest., Contracts, § 75; *Bard* v. *Kent,* 19 Cal.2d 449, 452 [122 P.2d 8, 139 A.L.R. 1032].) In the absence of the continuance of such mutuality of obligation between the parties, there would be no legal basis for carrying over the option agreement into the indefinite month-to-month tenancy permitted under the "hold-over" clause, apparently inserted in the lease for plaintiffs' protection from an unlawful detainer action. (Code Civ. Proc., § 1161.) The express statement in the lease making the availability of the option dependent upon the condition that "Lessees shall have paid all of the rental due up to the time of the exercise of said option," when considered in conjunction with the express provision in the lease for the agreed "term of two years" at the total "rental of $840.00," serves to correlate the life of the option with the fixed term of the lease. In these circumstances, plaintiffs' rights as lessees during the fixed term must be distinguished from their subsequent rights as month-to-month tenants under the "hold-over" clause.

There seems to be a dearth of authority upon the precise matter at issue in this case. Upon the question of whether a *renewal* or *extension* of a lease operates to extend the time for exercising the option to purchase contained therein, the courts have reached a variety of conclusions. (See notes 37 A.L.R. 1245; 39 A.L.R. 1108.) However, that is not the question here where the lease contains no provision for its renewal or extension but only a "hold-over" clause in anticipation of the possible continued tenancy of the property beyond the prescribed term marking the limit of the lessor-lessee relationship. Plaintiffs cite as pertinent the early case of *Abbott* v. *'76 Land & Water Co.,* 87 Cal. 323 [25 P. 693]. There the original lease contained both an option to purchase and an option to renew the leasehold from year to year, not to exceed two years. In the exercise of the option for renewal, a new lease agreement was drawn for the additional

term and, as stated in the opinion, it was mutually understood and agreed between lessor and lessee that the option to purchase was to persist but was not to be expressed in the new lease for the convenience of the lessor. On those facts, it was held that the option contained in the original lease would carry into the renewal lease and subsequent renewals made under the same circumstances. That factual situation is certainly not present in this case.

Nor does plaintiffs' reference to the English case of *Rider* v. *Ford* [1923], 1 Ch. 541, strengthen their position. There the lessee, several years after the expiration of the original term but while still in possession, sought to exercise an option to obtain a 97-year lease of the property. After stating that the lessee was then holding as a tenant from year to year and noting that the lessors had never called upon him to elect whether he would exercise the option, nor had he done anything to abandon the same, the court concluded from the informal correspondence between the parties in expression of their agreement that it could not ''read into it any limit in point of time except . . . that the option exists so long as the relationship of landlord and tenant continues, notwithstanding that the original term of seven years has run out.'' (P. 545.) Regardless of any significance which might attach to the character of that option as designed to continue ''the relationship of landlord and tenant'' rather than to destroy it upon the tenant's purchase of the freehold, the present case differs in these respects: The parties here have executed a formal document setting forth their understanding as to the demise of the property and the separate right of the option to purchase conferred on the lessees ''as part of the consideration for this lease.'' As so stipulated, the option is not ''unlimited in time'' but must be regarded as available only during the effective period of the consideration for the lease —two years—in correlation with occupancy of the property under the lessor-lessee relationship. (Cf. *In re Leeds & B. Breweries* [1920], 2 Ch. (Eng.) 548.) In the light of these observations the ''hold-over'' clause must reasonably be construed as operating to permit the former lessees to continue tenancy of the property ''on the same terms and conditions'' stated in the lease, but not to permit exercise of the option after the fixed period specified in the lease. While a lessor may be content for a fixed time to be restricted to a fixed price for the sale of his property, it is another matter alto-

gether to conclude that an option to purchase is to continue for an indefinite period under authority of a ''hold-over'' tenancy unless clear words are used to express that purpose. Such is not the case here, where the words of the ''hold-over'' provision are appropriate to a continuance of the tenancy but not to a continuance of the option. Accordingly, plaintiffs' attempt to exercise the option to purchase agreement seven months after the expiration of the lease, and while ''holding-over'' the property, came too late, and the trial court correctly so concluded.

The order denying plaintiffs' motion for a new trial being nonappealable, the appeal from said order is dismissed. The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.