Filed 1/10/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JAMES SMYTH et al., | B286609 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC628896) |
| v. | |
| DARYL ANN BERMAN et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County. Michael P. Linfield and Richard E. Rico, Judges. Affirmed.

Alston & Byrd LLP, David S. MacCuish and Coral Del Mar Lopez, for Plaintiffs and Appellants.

Barak Lurie, Michele A. Reikes and Brent A. Kramer for Defendants and Respondents Carmen Santa Maria and Pamela Ann Masters.

Yourist Law Corporation, APC, Bradley J. Yourist and Daniel J. Yourist, for Defendant and Respondent Daryl Ann Berman.

* * * * * *

A tenant rented a building for his audio recording business under several written leases, the most recent of which contained an undefined "right of first refusal to purchase." After the landlord signed a contract to sell the building to a third party, the tenant submitted an offer to purchase it, but the landlord rejected the offer because the third party's offer was for "considerably more money." The tenant sued the landlord, the landlord's real estate agent and the third party. After sustaining demurrers with leave to amend to two complaints, the trial court sustained a demurrer without leave to amend. The tenant now appeals, and in so doing, raises a question of first impression: Does a right of first refusal contained in a written lease expire when that leasehold ends and the tenant becomes a "holdover" tenant, and when the lease specifies "the continuing [holdover] tenancy will be from month to month"? We conclude that a right of first refusal is not an essential term that carries forward into a holdover tenancy unless the parties so indicate. Because there is no such indication in this case and because the tenant's alternative theories for enforcing the right of first refusal lack merit, we affirm the dismissal of this case.

**FACTS AND PROCEDURAL BACKGROUND**

I. **Facts**

A. *Commercial leases*

Plaintiff James Smyth (Smyth) owns and operates plaintiff Awesome Audio (Awesome), an audio recording company (collectively, plaintiffs). Since the mid-1990's, Smyth has leased 5725 Cahuenga Boulevard in North Hollywood (the Property) as Awesome's place of business. In 1999, Smyth bought the property next door as his residence. Also, in 1999, defendant

Daryl Ann Berman (Berman) bought the Property and has since been plaintiffs' landlord.

Plaintiffs and Berman signed their most recent written lease on December 2, 2011 (the 2011 Lease). By its terms, the 2011 Lease was set to expire on December 15, 2012, but contained an option to renew the lease for an additional three years. The lease also granted plaintiffs the right to make "alterations and improvements" to the Property and to sublet the Property as long as they obtained Berman's consent. The 2011 Lease further provided: "If the Tenant remains in possession after this lease ends, the continuing tenancy will be from month to month."

In each of the two written leases that are part of the record in this case, Smyth inserted a handwritten term granting him an option to purchase the Property: In a 1999 lease, he wrote in "first option to purchase"; in the 2011 Lease, he wrote in "Right of 1st refusal to purchase." Both Berman and Smyth initialed the addition to the 2011 Lease.

**B.** ***Smyth's July 2016 offer to purchase the Property***

On June 29, 2016, defendant Carmen Santa Maria (Santa Maria) submitted a written offer to buy the Property from Berman. In that offer, Santa Maria offered to pay $60,000 in cash and to have Berman loan him $440,000 that would be repaid over 10 years with four percent interest. If the loan were repaid over the full 10 year period, Santa Maria would ultimately pay Berman $676,000, but Santa Maria would not be penalized if it elected to repay the loan early (even though it would mean Berman would receive less interest).

Between July 12, 2016 and July 14, 2016, Smyth's attorney and Berman exchanged several emails. In an email to Berman,

3

plaintiffs' attorney purportedly summarized an oral conversation in which Berman said that Santa Maria's offer had been cancelled and agreed "to give [Smyth] the right of first refusal to purchase the property." Berman responded that she had "spoke[n] with [her real estate agent] and requested that he respond with the contracts and other requests and we hope that this can be worked out quickly." Plaintiffs' attorney expressed her satisfaction that the parties were "moving forward with this transaction." Berman responded: "I have retained council [sic]."

On August 4, 2016, plaintiffs submitted an offer to buy the Property for $505,000, comprised of $101,000 in cash and the balance from a $404,000 loan from a third-party lender.[1] In emails sent on August 10, 2016 and August 12, 2016, Berman rejected plaintiffs' offer, explaining that Santa Maria's offer was "higher" and for "considerably more money."

Berman moved forward with selling the property to Santa Maria and his business partner, defendant Pamela Ann Masters, and they recorded a grant deed and deed of trust on August 19, 2016.

## II.    Procedural Background

### A.    *Original complaint and First Amended Complaint*

#### 1.    *Complaints*

On August 16, 2016, and thus three days before Santa Maria and his partner recorded their grant deed and deed of

---

[1]    Plaintiffs made a prior offer on June 6, 2016, but the terms of this offer are not part of the record.

4

trust, plaintiffs sued Berman[2] for (1) specific performance of the right of first refusal, (2) breach of contract for not honoring the right of first refusal, and (3) intentional misrepresentation and fraud on the ground that Berman never had any "intention of fulfilling the right of first refusal."

On October 11, 2016, plaintiffs filed their First Amended Complaint (FAC). Plaintiffs added four new defendants— Berman's real estate agent, the agent's agency, Santa Maria and Santa Maria's business partner. Plaintiffs modified the intentional misrepresentation and fraud claim to add an additional allegation—namely, that Berman had lied to Smyth about the cancellation of Santa Maria offer. Plaintiffs also added six new claims: (1) tortious interference with the contractual relations between plaintiffs and Berman (against Berman's real estate agent, the agency, Santa Maria and Berman); (2) negligence (against the real estate agent and agency)[3]; (3) cancellation of instruments due to fraud (against the real estate agent, Santa Maria and Santa Maria's business partner); (4) civil conspiracy (against Berman, the real estate agent, the agency, and Santa Maria); (5) declaratory relief (against Berman, Santa Maria and Santa Maria's business partner); and (6) quiet title (against Berman, Santa Maria and Santa Maria's business partner).

---

[2]    Plaintiff also sued Berman's husband, even though he had died in 2001.

[3]    This claim is not part of this appeal, as the real estate agent and agency did not demur to plaintiffs' Third Amended Complaint.

2. *Demurrers to FAC*

Santa Maria, his business partner and Berman each separately demurred to the FAC. At the hearing on the demurrer, plaintiffs' attorney referred to plaintiffs' tenancy in 2016 as a "holdover tenancy."

The trial court sustained the demurrer to the FAC with leave to amend. The court observed that all of plaintiffs' claims "appear to be based upon" the valid exercise of a right of first refusal. The court went on to find that plaintiffs possessed no right to first refusal at the time of their August 2016 offer because (1) plaintiffs were "holdover" tenants by August 2016 because the 2011 Lease—even if extended by three years—had expired on December 16, 2015; and (2) the right of first refusal contained in the 2011 Lease did not carry forward as a term of the "holdover" tenancy under *Spaulding v. Yovino-Young* (1947) 30 Cal.2d 138 (*Spaulding*).

## B.  *Second Amended Complaint*

### 1.  *The complaint*

The Second Amended Complaint (SAC) named the same defendants and alleged the same nine claims, but for the first time alleged plaintiffs and Berman had entered into an "oral agreement" in November 2015 "to extend the lease for one year to December 201[6] under the same terms and conditions," including the term granting plaintiffs a right of first refusal.

### 2.  *Demurrers to SAC*

Santa Maria and Berman (collectively, defendants) separately demurred to the SAC.

The trial court sustained both demurrers with leave to amend. In ruling on Santa Maria's demurrer, the court concluded that plaintiffs' allegation in the SAC that the 2011

6

Lease had been renewed through December 2016 was factually at odds with plaintiffs' allegation in the FAC that the 2011 Lease had expired in December 2015; "this latest allegation," the court found, "falls squarely under the 'sham-pleading' doctrine" that must be rejected in the absence of any explanation for the factual discrepancy. The court went on to conclude that, even if it were not to reject plaintiffs' allegation of an oral lease extension, the oral extension was nonetheless invalid because (1) it was barred by the statue of frauds, and (2) Berman was not estopped from asserting the statute of frauds because plaintiffs had not made any "serious change in position"—a requirement for the application of estoppel—as a result of the oral extension. The court subsequently sustained Berman's Demurrer for substantially the same reasons.

### C. *Third Amended Complaint*

#### 1. *The complaint*

The Third Amended Complaint (TAC) named the same defendants and alleged the same nine claims but elaborated on the oral lease extension theory and added a new theory for why the right of first refusal was still valid in August 2016.

With regard to the oral lease extension, plaintiffs in the TAC alleged that (1) the oral lease extension satisfied the statute of frauds because the extension was confirmed in a letter *by Smyth* in December 2015 as well as in other "numerous writings [and] confirmations by Berman," which were sufficient because the parties had an "established practice, custom and conduct to have one person memorialize their discussions in writing," (2) Berman was estopped from alleging the statute of frauds because plaintiffs had suffered detriment as a result of the oral lease extension because they stayed on as tenants, because they had

7

made improvements to the Property, and because Smyth had purchased the property next door, and (3) plaintiffs had a valid explanation for alleging the oral lease extension rather than a holdover tenancy in the SAC—namely, that Smyth had at some point after filing the FAC "located documentary evidence" of the oral lease extension. Plaintiffs attached a December 2015 letter from Smyth as an exhibit.

For the first time, plaintiffs alleged that Smyth and Berman had, by virtue of the July 2016 email exchange between Smyth's lawyer and Berman, entered into a "separately enforceable" contract to grant plaintiffs a right of first refusal on the Property. Plaintiffs alleged that the consideration for this new contract was Smyth's expenditure of "time, energy and money to develop and submit" his August 2016 offer as well as Berman's receipt of Smyth's better offer.

### 2. *Demurrers to the TAC*

Santa Maria and Berman separately demurred to the TAC.

The trial court sustained both demurrers without leave to amend. The court ruled that a right of first refusal did not exist in August 2016 by virtue of an oral extension of the 2011 Lease because (1) such an oral extension was still invalid under the statute of frauds because the December 2015 letter signed *by Smyth* did not satisfy the statute of frauds's requirement of a writing "signed by Berman or her agent" and because the other, unspecific writings did not reference any right of first refusal, and (2) Berman was not estopped from asserting the statute of frauds as a defense because none of the actions plaintiffs alleged as detrimental reliance—paying rent, making improvements or buying the property next door—happened "after or because of the alleged December 2015 [oral] extension." The court also ruled

8

that a right of first refusal did not exist in August 2016 by virtue of any July 2016 contract. Specifically, the court concluded that plaintiffs had not detrimentally relied upon any such promise by Berman because (1) plaintiffs had started their efforts to make a counter-offer long before the alleged July 2016 promise, and (2) they had not changed their position by foregoing any legal remedies (as evidenced by the currently pending lawsuit). Because this was plaintiffs' "fourth attempt to plead a valid complaint" and because they had not articulated how a fifth attempt might succeed, the court denied leave to amend.

### D.   *Judgment and appeal*

After the trial court entered a judgment of dismissal, plaintiffs filed a timely notice of appeal.

## DISCUSSION

Plaintiffs challenge the dismissal of the TAC on demurrer. "In reviewing a trial court's order sustaining a demurrer without leave to amend, we must ask (1) whether the demurrer was properly sustained, and (2) whether leave to amend was properly denied." (*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1335 (*Schep*).) The first question requires us to independently examine "'whether [the complaint] alleges facts sufficient to state a cause of action.'" (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230; *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.) In so doing, we accept as true "all material facts properly pled" in the operative complaint. (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152.) We also accept as true all materials properly "subject to judicial notice," and disregard any allegations in the operative complaint inconsistent with the judicially noticed facts. (*Schep*, at p. 1335; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1,

9

20.) "The second question 'requires us to decide whether """there is a reasonable possibility that defect [in the operative complaint] can be cured by amendment.""""" (*Schep*, at p. 1335.)

The TAC alleges nine causes of action, and the eight of them at issue in this appeal ultimately turn on whether plaintiffs possessed an operative right of first refusal in August of 2016.[4] The breach of contract, specific performance and tortious interference with a contractual relation causes of action each allege that Berman did not honor the right of first refusal, which necessarily presupposes its validity at that time. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 [breach of contract claim requires a valid contract and breach thereof]; *Darbun Enterprises, Inc. v. San Fernando Community Hospital* (2015) 239 Cal.App.4th 399, 409 ["specific performance" requires, among other things, proof of "the elements of a standard breach of contract"]; *Pacific Gas & Electric Co. v. Bear Sterns & Co.* (1990) 50 Cal.3d 1118, 1126 [tortious interference tort requires, among other things, proof of a "valid contract between plaintiff and a third party"].) Contrary to what plaintiffs allege, the intentional misrepresentation / fraud cause of action alleges that Berman never had the "intention of fulfilling the right of first refusal" and, relatedly, that Berman falsely reported that she had canceled Santa Maria's offer to spend time exercising that right, which necessarily presupposes the validity of that right (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [intentional misrepresentation requires proof of a "false representation,

_____

4      As noted above, plaintiffs' negligence claim names only the real estate agent and agency, neither of whom demurred to that claim.

10

concealment, or nondisclosure"]), and the cancellation of instruments cause of action similarly alleges that Santa Maria's grant deed and deed of trust are void or voidable due to such intentional misrepresentation and fraud, and thus similarly turns on the validity of the right of first refusal (*U.S. Bank National Assn. v. Naifeh* (2015) 1 Cal.App.5th 767, 778 [cancellation of instrument requires, among other things, proof that "the instrument is void or voidable due to, for example, fraud"]). The quiet title cause of action alleges that Berman's sale of the Property to Santa Maria and his business partner is invalid because Berman did not honor the right of first refusal (Code Civ. Proc., § 760.020 [quiet title claim requires proof of an "adverse claim[] to real . . . property]; accord, *South Shore Land Co. v. Petersen* (1964) 226 Cal.App.2d 725, 740-741 [same]). And the conspiracy and declaratory relief causes of action are necessarily derivative of one or more of the above described causes of action (*Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.* (1994) 7 Cal.4th 503, 510-11 [civil conspiracy is "not a cause of action" unto itself, and instead "imposes liability" for "shar[ing]" a "common plan or design" in perpetrating another tort]; *Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794, 800 [declaratory relief claim fails when it is "'wholly derivative'" of other failed claims]), and hence also hinge on the validity of the right of first refusal.

In the FAC, SAC and operative TAC, plaintiffs have alleged three theories under which they had a valid right of first refusal in August 2016: (1) as holdover tenants after the 2011 Lease expired; (2) pursuant to an oral extension of the 2011 Lease; and (3) pursuant to a separate, July 2016 contract that granted them a right of first refusal. We will examine each.

11

# I.     Right of First Refusal Under A Holdover Tenancy

When a lease expires but the tenant remains in possession, the "relationship" of the landlord and tenant "changes." (*Schmitt v. Felix* (1958) 157 Cal.App.2d 642, 647 (*Schmitt*).)  The "lessor-lessee relationship" based on "'privity of contract'" ends, and a new "landlord"-"tenant" relationship based on "'privity of estate'" springs into being by the operation of law.  (*Ibid.*; Civ. Code, § 1945.)  This new "hold-over" tenancy is "presumed" to continue "[under] the same terms" contained in the now-expired lease "except [as those terms] may have been . . . modified" by the landlord and tenant.  (Civ. Code, § 1945; *Miller v. Stults* (1956) 143 Cal.App.2d 592, 598.)  This case tees up the question:  If the expired lease contained a right of first refusal, is that right one of the "terms" that presumptively carries forward into the holdover tenancy?

We conclude that the answer is "no," and do so for two reasons.

First, the only terms from the expired lease that are presumed to carry forward into a holdover tenancy are the "essential" terms of that lease (*Spaulding*, *supra*, 30 Cal.2d at p. 141)—that is, the "term[s] or condition[s] of the demise" such as the "'amount and time of payment of rent'" (*ibid.*; *Shenson v. Shenson* (1954) 124 Cal.App.2d 747, 753).  In *Spaulding*, *supra*, 30 Cal.2d at p. 141, our Supreme Court held that an option to purchase property set forth in a lease was a "separate and distinct right[] and power[]" that was *not* an "essential covenant" of that lease, and thus presumptively did not carry forward into a holdover tenancy.  *Spaulding*'s logic applies with equal force to a right of first refusal.  That is because a right of first refusal is a species of option to purchase:  It is a *conditional* option that

12

entitles the holder, if the seller decides to sell property and has obtained an acceptable, bona fide offer from a third party buyer, to make an offer that meets or beats the third party's offer. (*Bill Signs Trucking, LLC v. Signs Family Limited Partnership* (2007) 157 Cal.App.4th 1515, 1523; *Campbell v. Alger* (1999) 71 Cal.App.4th 200, 206-207.) Of course, the parties to a lease certainly have the power to rebut the general presumption that a right of first refusal does not carry forward into a holdover tenancy by expressing a contrary intent. (*Waller v. Trunk Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 ["'mutual intention'" of the parties controls]; Civ. Code, §1636; see, e.g., *Central Building, LLC v. Cooper* (2005) 127 Cal.App.4th 1053, 1062-1063 [lease guaranty carries forward because lease specified that guaranty was applicable notwithstanding extensions of the lease].) But Berman and plaintiffs did not do so in the 2011 Lease, which merely provided that any "continuing [holdover] tenancy will be from month to month." This holdover provision does not incorporate, or even mention, the right of first refusal or, for that matter, any other term of the 2011 Lease. (Cf., e.g., *Last v. Puehler* (Wis. Ct. App. 1961) 19 Wis. 2d 291, 296 (*Last*) [lease incorporated "the terms of the original lease" into any holdover tenancy]; accord, *Staudigl v. Harper* (1946) 76 Cal.App.2d 439, 441-442 [option to purchase does not carry forward when prior lease specified that option was to be exercised "on or before the expiration" of the lease].)

Second, a rule presuming that rights of first refusal do not carry forward into holdover tenancies furthers the public policy favoring the stability of commercial tenancies. Holdover tenancies *exist* to ensure stability because they are a mechanism by which tenants may remain in possession without disruption,

13

albeit typically only on a month to month basis.  (Civ. Code, § 1945.)  If a right of first refusal presumptively carried forward into a holdover tenancy, a landlord wishing to nullify that right could easily do so by evicting the holdover tenant and selling the property one day later, both of which would be within its rights as the landlord of a holdover tenant.  This "creates an incentive for landlords to evict holdover tenants as soon as possible" (*Bateman v. 317 Rehoboth Ave., LLC* (Del. Ch. Ct. 2005) 878 A.2d 1176, 1184 (*Bateman*)), a result at odds with the stability of commercial tenancies.  The contrary rule that carries such purchase options forward only if the parties so specify avoids this result, thereby making holdover tenancies more stable.

Plaintiffs make what boil down to three categories of arguments in favor of their position that rights of first refusal should automatically carry forward into holdover tenancies.

First, plaintiffs urge us to follow the precedent of several states holding that rights of first refusal (or other purchase options) presumptively carry forward into holdover tenancies.  To be sure, the state courts are split on this issue.  The majority rule is the rule we adopt today.  (*Nevala v. McKay* (Mont. 1978) 178 Mont. 327, 332 (*Nevala*) [right of first refusal presumptively does not carry forward]; *Brittany Sobery Family Ltd. Partnership v. Coinmach Corp.* (Mo. Ct. App. 2013) 392 S.W.3d 46, 49-50 [same]; *Bateman*, *supra*, 878 A.2d at p. 1184 [same]; *Wanous v. Balaco* (Ill. 1952) 412 Ill. 545, 548-549 [option to purchase presumptively does not carry forward]; *Glocksine v. Malleck* (Mich. 1963) 372 Mich. 115, 119, 125 [same]; *Carroll v. Daigle* (N.H. 1983) 123 N.H. 495, 499-500 [same]; *Wright v. Barclay* (Neb. 1949) 36 N.W.2d 645, 647-648 (*Wright*) [same]; *Vernon v. Kennedy* (N.C. Ct. App. 1981) 273 S.E.2d 31, 32 [same]; *Andreula v. Slovak*

14

*Gymnastic Union Sokol Assembly No. 223* (N.J. Ct. App. 1947) 140 N.J. Eq. 171, 174 (*Andreula*) [same].)  The minority rule presumes that a right of first refusal or other option to purchase carries forward into a holdover tenancy unless a contrary intent appears.  (*Kutkowski v. Princeville Golf Course, LLC* (Haw. 2013) 129 Haw. 350, 360 [applying this rule to a right of first refusal]; *Last*, *supra,* 19 Wis. 2d at pp. 296-297 [same]; *Tubbs v. Hendrickson* (N.Y. Sup. Ct. 1976) 390 N.Y.S.2d 791, 792-793 [same]; *Gressitt v. Anderson* (Md. Ct. App. 1947) 187 Md. 586, 589 (*Gressitt*) [applying this rule to a purchase option].)  Both the majority and minority rule defer to the parties' expressed intent (*White Castle System, Inc. v. Blohm* (2d Cir. 1986) 807 F.2d 313, 315) and presume that the parties intend only for the terms "essential" or "integral" to the expired lease to carry forward into the holdover tenancy (*Wright*, at p. 647; *Last*, at p. 296).  The rules differ only insofar as the majority rule presumes that a right of first refusal or option to purchase is *not* essential, while the minority rule presumes that it is.  (Compare *Wright,* at p. 647 [not "essential"]; *Andreual*, at p. 174 ["collateral"] with *Last,* at p. 296 ["integral"]; *Gressitt*, at p. 589 [part of "indivisible contract"].)  *Spaulding*'s holding that a purchase option is "not an essential covenant" places California firmly in the camp following the majority rule.

Second, plaintiffs contend that a right of first refusal is different from a purchase option, so *Spaulding*'s presumptive rule against carrying forward the latter into a holdover tenancy should not extend to the former.  A presumption against carrying forward options to purchase makes sense, as *Spaulding* itself noted, because such options obligate a landowner to accept an offer at a fixed price, and it is reasonable to presume that the

15

parties did not intend such an offer to continue "indefinite[ly]" under a holdover tenancy. (*Spaulding, supra,* 30 Cal.2d at pp. 143-144.) Rights of first refusal, by contrast, obligate a landowner to accept an offer only after it has decided to sell and only if the right holder's offer meets or exceeds a competing offer; thus, plaintiffs reason, rights of first refusal—unlike options to purchase—do not "tie" the landowner into accepting an offer at "a fixed price which may have become inadequate by lapse of time" during the holdover tenancy. (Accord, *Tubbs, supra,* 390 N.Y.S.2d at p. 793.) A presumption against carrying forward a right of first refusal into a holdover tenancy, plaintiffs conclude, is accordingly less compelling. This argument is not without persuasive force, but it does warrant creating a special rule for rights of first refusal because a right of first refusal is still, at bottom, a type of purchase option, (*Campbell, supra,* 71 Cal.App.4th at pp. 206-207) and because the chief rationale underlying *Spaulding*'s presumption—ensuring stability in commercial tenancies—applies with equal force to both rights of first refusal and purchase options. Put differently, the absence of a further reason not to carry forward rights of first refusal does not undermine the other reasons for not doing so.

Third, plaintiffs argue that *Spaulding*'s presumption may be rebutted by proof of the parties' contrary intent, and that intent is typically a question of fact that should not be resolved on a demurrer. Although intent is often a factual issue that can render summary judgment inappropriate (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 147, disapproved on another ground in *Reid v. Google, Inc.,* (2010) 50 Cal.4th 512, 524), here we are assessing the sufficiency of the allegations in the operative complaint as well as the documents

16

attached thereto, and those sources point to one conclusion: Plaintiffs and Berman did not intend to make the right of first refusal a term of any holdover tenancy. (Accord, *Hoffman v. 162 North Wolfe, LLC* (2014) 228 Cal.App.4th 1178, 1194 (*Hoffman*) [noting that factual issue of reliance "'may be decided as a matter of law if reasonable minds can only come to only one conclusion based on the facts.' [Citation.]"].)

## II.    Right of First Refusal Under Oral Extension of the 2011 Lease

When a plaintiff files an amended complaint, it may not "omit harmful allegations . . . from previous complaints." (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425-426; *Womack v. Lovell* (2015) 237 Cal.App.4th 772, 787); *Hendy v. Losse* (1991) 54 Cal.3d 723, 742-743 (*Hendy*); *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1189 fn. 1 (*Aryeh*).) Unless the plaintiff provides a "plausible" explanation for dropping the harmful allegations (such as the need to correct a mistaken allegation or to clarify ambiguous facts), the trial court will take judicial notice of the harmful allegations and disregard the new and contrary allegations. (*Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 383-384.) This is known as the "sham pleading" doctrine and prevents the abuse of process that would arise if parties could circumvent prior adverse rulings by pleading the underlying facts in the alternative. (*Womack*, at p. 787; *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 733 fn. 3.)

Plaintiffs' allegations in the SAC and TAC that the 2011 Lease (and, specifically, its right of first refusal) was still in effect in 2016 by virtue of an oral extension of that lease in December 2015 is invalid under the "sham pleading" doctrine. That allegation is factually inconsistent with plaintiffs' prior

17

allegation, in the original complaint and FAC, that their lease with Berman ended in 2015 upon expiration of the three-year extension contained in the 2011 Lease. Because plaintiffs alternatively alleged *no* extension and then *an* extension, they changed the facts. (Accord, *Schmit*, *supra,* 157 Cal.App.2d at p. 647 [holding that a holdover tenancy is fundamentally different from a tenancy based on a lease].) What is more, plaintiffs' explanation for why they changed the facts is not plausible. Plaintiffs allege that they did not initially allege the oral lease extension because they did not "locate[] documentary evidence" of that extension until after the FAC was filed. But this is not plausible: Smyth alleges that he was a party to the oral lease extension, which means he was present when it was created; he would accordingly know about the extension whether or not he later found a document memorializing it.

Plaintiffs offer three reasons why their oral lease allegation is not a sham pleading.

First, they argue that the trial court did not rely on the sham pleading doctrine in sustaining the demurrer to the TAC. This is true, but beside the point because the issue was raised below (and again on appeal), and we may affirm on any ground supported by the record. (*Stowe v. Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 424-425.)

Second, plaintiffs assert that the FAC did not use the phrase "holdover tenancy," so there is no inconsistency between the FAC and later complaints. Plaintiffs' subsequent use of the phrase "holdover tenancy" to describe the FAC's allegation at the hearing on the demurrer to the FAC, they continue, does not retroactively insert that phrase into the FAC. Even if we looked solely to what is alleged in the FAC, the FAC alleges a tenancy

18

that ends in December 2015; this by definition renders plaintiffs' tenancy in 2016 a "holdover tenancy." Thus, plaintiffs' argument at the demurrer hearing did not add a new allegation to the FAC; it just accurately summarized the allegations that were already there.

Third, plaintiffs contend that any contrary allegations in the TAC cannot fall under the "sham pleading" doctrine because the trial court granted them leave to amend the SAC. We reject this argument. The grant of a leave to amend does not include within it the leave to amend to plead inconsistent allegations; if it did, the "sham pleading" doctrine would cease to exist. That is not the law. (*Hendy*, *supra*, 54 Cal.3d at pp. 742-743; *Aryeh*, *supra*, 55 Cal.4th at p. 1189 fn. 1.)

Because we conclude that plaintiffs' oral extension theory is barred by the "sham pleading" doctrine, we have no occasion to examine the trial court's alternative grounds for dismissing this theory.

## III. Right of First Refusal in a Separate, July 2016 Contract

The statute of frauds provides that any agreement for "the sale of real property, or of an interest therein" is invalid unless it is "in writing and subscribed to by the party to be charged." (Civ. Code, § 1624, subd. (a)(3).) Because they are a species of an option to purchase, rights of first refusal to purchase real property must satisfy the statute of frauds. (*Pacific Southwest Development Corp. v. Western Pac. R. Co.* (1956) 47 Cal.2d 62, 66; *Woods v. Bradford* (1967) 254 Cal.App.2d 501, 505.) To satisfy the "writing" requirement of the statute of frauds, the writing may be cobbled together from various documents (*Derrick v. C.W.R. Ford Co.* (1915) 27 Cal.App. 456, 458; *Brewer v. Horst-Lachmund Co.* (1900) 127 Cal. 643, 646-647), but must still

19

"'identif[y] the subject of the parties' agreement, show[] that they made a contract, and state[] the essential contract terms with reasonable certainty'" (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 766 (*Sterling*), quoting Rest.2d Contracts, § 131).

The allegations set forth in the TAC do not satisfy these requirements. The TAC alleges that the July 2016 contract is documented in the exchange of four emails between Smyth's attorney and Berman. Although Smyth's attorney in her first email states that Berman has agreed to give Smyth a "right of first refusal," Berman responded by saying she "requested that [her real estate agent] respond with the contracts and other requests," and responded to further emails by saying she had "retained council [sic]." Berman's equivocal and non-confirmatory responses do not "show[]" that plaintiffs' counsel and Berman "made a contract" or set forth the "essential contract terms with reasonable certainty." (*Sterling*, *supra*, 40 Cal.4th at p. 766.)

Plaintiffs respond with three arguments.

First, plaintiffs assert that the email exchange, despite its sparsity, constitutes a writing sufficient to satisfy the statute of frauds because the emails reflect what was "understood by the parties" in the broader context of their interactions. With this assertion, plaintiffs are inviting us to look to extrinsic evidence to prove the existence of the parties' contract and to supply its essential terms. This we may not do. (*Sterling*, *supra*, 40 Cal.4th at p. 767 ["the [writing] itself must include the essential contractual terms, [so] it is clear that extrinsic evidence cannot *supply* those required terms."]; *Jacobs v. Locatelli* (2017) 8 Cal.App.5th 317, 325 [same].) Plaintiffs make the related argument that Berman's email telling plaintiffs' attorney that

20

she retained counsel does not negate the valid contract formed by her first email, but this argument lacks merit because it assumes that Berman's first email created a contract enforceable by the statute of frauds.  As noted above, it did no such thing.

Second, plaintiffs contend that Berman should be estopped from asserting the statute of frauds as a defense.  A party may be estopped from asserting the statute of frauds as a defense to a contract in order to "prevent fraud that would result from refusal to enforce [an] oral contract[]."  (*Monarco v. Lo Greco* (1950) 35 Cal.2d 621, 623-624 (*Monarco*); *Notten v. Mensing* (1935) 3 Cal.2d 469, 474.)  Before estoppel applies, the party so pleading must allege that refusal to enforce the oral contract will result in (1) "unconscionable injury" because the party pleading estoppel "seriously . . . change[d] its position in reliance on the [oral] contract," or (2) the "unjust enrichment" of the party pleading the statute of frauds as a defense because that party "receiv[ed] the benefits of the other's performance."  (*Monarco*, at pp. 623-624; *Tenzer v. Superscope* (1985) 39 Cal.3d 18, 27; *Allied Grape Growers v. Bronco Wine Co.* (1988) 203 Cal.App.3d 432, 444.)

The allegations contained in the TAC do not satisfy either prong of this estoppel doctrine.  Plaintiffs allege that they "seriously changed their position" because they spent time working up the offer they made in August 2016; performed their part of the agreement by making the August 2016 offer; for many years paid rent, modified and improved the Property, and bought the property next door; and ultimately lost the opportunity to make an offer on the Property.  None of these allegations constitutes a "serious change in position."  The time and money plaintiffs spent working up the offer in August 2016 does not qualify because "'the payment of money is not "sufficient part

21

performance to take an oral agreement out of the statute of frauds"'" (*Oren Realty & Development Co. v. Superior Court* (1979) 91 Cal.App.3d 229, 235, quoting *Anderson v. Stansbury* (1952) 38 Cal.2d 707, 716).  Because the payment of money is not sufficient to constitute part performance, neither is plaintiffs' offer to pay money to purchase the Property.[5]  Plaintiffs' payment of rent, physical changes to the Property, and purchase of the property next door all happened *before* the July 2016 promise and thus could not have been made "in reliance on [that] contract." (*Monarco, supra*, 35 Cal.2d at pp. 623-624.)  And "the alleged loss of opportunities to purchase other land does not amount to a change of position" sufficient to excuse noncompliance with the statute of frauds.  (*Carlson v. Richardson* (1968) 267 Cal.App.2d 204, 208; *Oren*, at p. 235.)  Plaintiffs generically allege that Berman was unjustly enriched, but this allegation is impossible to square with their allegation that their offer to buy the Property was the better offer, which means Berman was *harmed* by her failure to honor the alleged July 2016 contract that would have obligated her to consider the allegedly better offer.

Finally, plaintiffs make the final argument that questions of reliance are factual in nature and thus should not be decided as a matter of law on a demurrer.  This argument overlooks that even factual issues may be resolved short of a trial where, as here, they fail as a matter of law.  (*Hoffman, supra*, 228 Cal.App.4th at p. 1194.)

---

[5]     Plaintiffs also point to Berman's cancellation of Santa Maria's offer as evidence that *Berman* performed the July 2016 contract, but this assertion is flatly inconsistent with plaintiffs' allegations, in the FAC, that Berman "blatantly lied that Santa Maria's offer was cancelled."

In light of our conclusion that the alleged July 2016 contract is invalid for noncompliance with the statute of frauds, we have no occasion to consider defendants' further arguments that this contract fails for lack of consideration (or plaintiffs' responsive argument that promissory estoppel supplies the requisite consideration) or to consider defendants' argument that the contract was never breached.

## DISPOSITION

The judgment of dismissal is affirmed.  Defendants are entitled to their costs on appeal.

**CERTIFIED FOR PUBLICATION.**


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

24