Filed 7/29/22  Taglyan v. Tekeyan Cultural Assn. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PETROS TAGLYAN et al., | B298882 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC632331) |
| v. | |
| TEKEYAN CULTURAL ASSOCIATION, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dalila Corral Lyons, Judge.  Reversed.

Diem Law and Robin L. Diem, for Plaintiffs and Appellants.

Freeman Mathis & Gary, Chad E. Weaver and Isis D. Miranda, for Defendant and Respondent.

————————————

The present appeal is from a judgment of dismissal entered after the trial court sustained a demurrer to a complaint alleging breach of oral contracts. The trial court concluded that the alleged contracts were barred by the statute of frauds because they gave the plaintiffs an option to purchase a school. We disagree: As we discuss, the option to purchase the school did not necessarily include an option to purchase real property and, in any event, the alleged option could be severed from the remainder of the agreements. We therefore reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Petros and Karine Taglyan, Martin and Angela Martirosian, and Hakop and Seda Semirdzhyan (collectively, plaintiffs) are members of Los Angeles's Armenian–American community. Defendant Tekeyan Cultural Association (TCA) is a nonprofit corporation that operated the Arshag Dickranian Armenian School (Dickranian or school), a prominent Armenian-American school in Los Angeles.

### A. Present action.

Plaintiffs filed the present action against TCA in August 2016.[1] In July 2017, after several demurrers were sustained in part, plaintiffs filed a third amended complaint, which alleged as follows:

---

[1] Plaintiffs initially asserted causes of action against individual members of TCA's Board of Directors, but the individual defendants were eliminated from the action in September 2017. Plaintiffs have not alleged error as to the individual defendants, and they are not parties to this appeal.

2

Dickranian was founded in 1981 to teach students the California state curriculum and Armenian language and culture. All of plaintiffs' children attended Dickranian, and plaintiffs generously supported the school through financial and other contributions.

In 2003, TCA's directors approached the Taglyans seeking financial assistance to help expand the school and construct a new school building. Between 2003 and 2008, the Taglyans and TCA orally agreed that the Taglyans would make significant financial contributions to the school pursuant to the following terms: (1) the new school building would be named after the Taglyans; (2) TCA's directors would act in good faith to insure the continued operation and success of the school; (3) if the school experienced financial difficulty, TCA would notify the school's donors, including the Taglyans, to permit them to make additional contributions to keep the school operational; (4) TCA's directors would not take any action to jeopardize the school's continued operation and would not close it before giving the plaintiffs the opportunity to purchase the school and/or obtain additional financing on the school's behalf; and (5) if TCA's directors did not follow this protocol or unilaterally closed the school, they would repay the Taglyans's contributions with interest. In exchange for these promises, the Taglyans made conditional donations to Dickranian in excess of $1 million.

In 2004 and 2006, the Martirosians orally agreed with TCA and its directors to donate $25,000 ($10,000 in 2004 and $15,000 in 2006) to support the new campus. Those contributions were made pursuant to oral agreements whose terms were identical to TCA's agreements with the Taglyans, except the Martirosians would not receive naming rights.

In 1991, the Semirdzhyans orally agreed with TCA and its directors to donate $20,000 to support the school. The Semirdzhyans and TCA entered into an oral contract whose terms were identical to TCA's agreements with the Taglyans's except the Semirdzhyans were to receive naming rights to the school's 11th grade classroom.

Plaintiffs duly performed all of their obligations under the oral agreements. TCA breached the oral agreements by failing to advise plaintiffs that the school was in financial difficulty, failing to approach plaintiffs about buying the school or obtaining additional financing, closing the school, selling the land on which the school was situated, and failing to repay plaintiffs any portion of their conditional gifts. Plaintiffs asserted these breaches by TCA caused them damages in excess of $1 million and gave rise to causes of action for breach of contract and breach of the implied covenant of good faith.[2]

## B. TCA's motion for judgment on the pleadings.

In November 2018, TCA filed a motion for judgment on the pleadings. TCA contended that the alleged oral agreements were barred by the statute of frauds (Civ. Code, § 1624) because they contained an option to purchase the school, which was an option

---

[2] The third amended complaint also alleged causes of action for fraudulent concealment, fraud, and negligent misrepresentation. The trial court sustained a demurrer to the fraudulent concealment cause of action and struck the causes of action for fraud and negligent misrepresentation. Plaintiffs do not challenge these rulings on appeal.

to purchase real property.[3]  TCA therefore urged that plaintiffs could not recover damages for the alleged breaches of the agreements as a matter of law.

Plaintiffs opposed the motion.  Among other things, they urged that the alleged oral agreements were not barred by the statute of frauds because they were memorialized in writings that set forth the essential terms of the agreements and had been fully performed by plaintiffs.  Plaintiffs also asserted that TCA was estopped to rely on the statute of frauds because plaintiffs had seriously changed their positions in reliance on the oral agreements.

The trial court granted the motion for judgment on the pleadings.  It found that the alleged agreements between plaintiffs and TCA were oral contracts pertaining to the sale of real property, the alleged writings were insufficient to satisfy the statute of frauds, plaintiffs had not pled that they seriously changed their positions in reliance on the alleged oral agreements, and payment of money under an alleged oral agreement does not remove the agreement from the statute of frauds.  The court therefore found that judgment on the pleadings was proper as to both contract causes of action, but it granted plaintiffs leave to amend.

---

[3]  TCA also contended the alleged agreements violated the statute of frauds because they could not be completed within one year.  TCA does not make this contention on appeal, and thus we do not address it.

## C. Fourth amended complaint; demurrer; judgment of dismissal.

Plaintiffs filed the operative fourth amended complaint in January 2019. The fourth amended complaint was largely identical to the third amended complaint, but it eliminated the allegations that TCA had promised to give the Martirosians and Semirdzhyans the opportunity to purchase the school before closing it, and it alleged for the first time that TCA issued memoranda noting the date, donation amount, and purpose ("School Expansion Project") of each of plaintiffs' donations. The fourth amended complaint continued to allege that TCA had promised to offer the Taglyans the opportunity to purchase the school before closing it.

TCA demurred. It asserted that the fourth amended complaint (1) was a "sham pleading" because it eliminated the allegation that the Martirosians and Semirdzhyans had been promised an opportunity to purchase the school, and (2) continued to violate the statute of frauds because it alleged that the Taglyans had been orally promised an option to purchase the school.

Plaintiffs opposed the demurrer. They urged that the complaint was not a sham pleading because while it corrected some minor errors, its allegations were not materially different than those of the third amended complaint. Plaintiffs further contended that the alleged payment receipts, checks, and naming rights took the oral contracts out of the statute of frauds and, in any event, the parties had valid breach of contract claims even if the option to purchase the school was barred by the statute of frauds.

6

The trial court sustained the demurrer to the fourth amended complaint without leave to amend in March 2019, and entered a judgment of dismissal on April 22, 2019.[4] Plaintiffs timely appealed.

## DISCUSSION

Plaintiffs contend the trial court erred by finding that the contract causes of action were barred by the statute of frauds because (1) plaintiffs did not sue to enforce an option contract to purchase real property, (2) the alleged option to purchase real property was severable from the rest of the oral agreements, (3) plaintiffs alleged the existence of memoranda signed by TCA's agents that established the terms of the alleged agreements, and (4) TCA was estopped from invoking the statute of frauds because plaintiffs had fully performed under the agreements.

## I.     Standard of review.

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo:  we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." ' (*Villafana v. County of San Diego* (2020) 57 Cal.App.5th 1012, 1016.)  In reviewing the complaint, 'we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.' (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814.)" (*Inns-by-the-Sea v. California Mutual Ins. Co.* (2021) 71 Cal.App.5th 688, 696–697.)  If the complaint states a cause of action on any possible legal theory, we

---

[4]     The trial court's March 1, 2019 minute order does not explain the basis for the court's ruling.

must reverse the trial court's order sustaining the demurrer. (*Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1007.)

## II. The trial court erred by sustaining the demurrer to the first and second causes of action.

### A. The statute of frauds does not bar plaintiffs' contract claims.

The statute of frauds, as memorialized in Civil Code section 1624, sets forth several categories of contracts that "are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent." TCA contends, and the trial court apparently found, that the oral agreements alleged here fall within the category described in Civil Code section 1624, subdivision (a)(3), i.e., "agreement[s] . . . for the sale of real property, or of an interest therein."

TCA asserts, and plaintiffs do not dispute, that options to purchase real property have been held to be subject to the statute of frauds. (E.g., *Smyth v. Berman* (2019) 31 Cal.App.5th 183, 197 ["Because they are a species of an option to purchase, rights of first refusal to purchase real property must satisfy the statute of frauds."]; *Pacific Southwest Development Corp. v. Western P. R. Co.* (1956) 47 Cal.2d 62, 66 ["In California an option to purchase real property has been held to come within the statute of frauds and so must be in writing."].) We are not persuaded, however, that the alleged promise not to close the school "before giving [the Taglyans] and [the school's] donors the opportunity to purchase the school and/or obtain a loan or the necessary financing to continue its success" constitutes an option to purchase real property. As alleged in the complaint, the plaintiffs' intent in

8

entering the oral agreements was not to invest in real estate, but to keep the school operational for the benefit of Los Angeles's Armenian–American community.  The right to purchase "the school," therefore, did not necessarily give plaintiffs the right to purchase the land on which the school buildings were located, but might have been satisfied by selling the property to a third party subject to an agreement to allow plaintiffs to continue to operate the school on the property, or by transferring the school to the plaintiffs to be operated at a different site.

In any event, even if the alleged promise to allow plaintiffs to purchase the school was within the statute of frauds, the trial court erred in sustaining the demurrer.  Where an oral agreement is alleged to contain multiple discreet promises, only some of which are subject to the statute of frauds, the agreement may be enforced in part "if the court by reference to the terms of the agreement can separate those promises of performance not falling within the statute from those that do so."  (*White Lighting Co. v. Wolfson* (1968) 68 Cal.2d 336, 341 (*White Lighting*); *Pollyanna Homes, Inc. v. Berney* (1961) 56 Cal.2d 676, 678 (*Pollyanna Homes*).)  For example, in *Pollyanna Homes*, the plaintiff and defendants were alleged to have entered into an oral contract by which the defendants agreed (1) to transfer title to property to the plaintiff, and (2) to install offsite improvements adjacent to that property.  The defendants deeded the property to the plaintiff but did not install the offsite improvements, and the plaintiffs sued for breach of contract.  (56 Cal.2d at p. 678.)  Our Supreme Court held that although the promise to transfer title could not have been enforced under the statute of frauds, the promise to install offsite improvements "was not within the statute of frauds *and was divisible from the promise for the sale of*

9

*the land.*"  (*Id.* at p. 679, italics added.)  It therefore concluded that the statute of frauds did not bar plaintiff's cause of action. (*Ibid.*)

The Supreme Court similarly concluded in *White Lighting*, *supra*, 68 Cal.2d at p. 336.  There, an employee alleged that his former employer had breached an oral severance agreement to repurchase the employee's shares of the company's stock for $15,000 and to pay the employee a severance payment, a share of gross receipts, and moving expenses.  (*Id.* at p. 345.)  The Supreme Court held that the promise to purchase the employee's shares of stock was unenforceable under the "sale of goods" provision of the statute of frauds (former Civ. Code, §§ 1624a, subd. (1), 1724, subd. (1)), but that the employee could state a claim for breach of the other alleged promises.  It explained:  "If a claimant alleges two or more promises of performance 'that can easily be distinguished and separated by the court by reference to the agreement itself' (2 Corbin on Contracts, § 313, at pp. 127–128), only that promise of performance which falls clearly within the statute of frauds cannot be enforced. . . .  [¶]  Here, by reference to the alleged agreement itself, the 'repurchase' promise can be clearly distinguished and separated from the promises to pay one month's salary, traveling expenses, and [the employee's] share of the gross receipts accrued during his period of employment as vice president.  Any other construction of the alleged oral termination of employment contract would transgress the policy of restricting the application of the statute of frauds exclusively to those situations which are precisely covered by its language." (*White Lighting,* at pp. 345–346.)

The present case is analogous to *Pollyanna Homes* and *White Lighting*.  Here, plaintiffs allege that the Taglyans agreed

to donate money to the school in exchange for TCA's oral promises to (1) name a new building after the Taglyans, (2) make best efforts to ensure the continued operation of the school, (3) notify the school's donors of any future financial difficulties and allow them to make additional contributions, (4) before closing the school, give the school's donors the opportunity to purchase the school and/or obtain a loan to keep the school open, and (5) return the Taglyans's donations, with interest, if TCA closed the school or removed the Taglyans's name from the school building. In other words, plaintiffs alleged that TCA made five separate promises, only one of which arguably ran afoul of the statute of frauds. Because that promise "can be clearly distinguished and separated from" the remaining promises (*White Lighting*, *supra*, 68 Cal.2d at p. 346), the trial court erred by relying on the statute of frauds to sustain demurrers to the entirety of the contract claims.

Citing *Texaco v. Ponsoldt* (9th Cir. 1991) 939 F.2d 794 (*Texaco*), TCA asserts that the alleged promise to allow plaintiffs to purchase the school cannot be severed from the other promises because plaintiffs did not "allege separate consideration for the fourth promise." We do not agree. While the rule articulated in *Texaco*—that the test of whether a contract is divisible is whether "the consideration is single" (*id*. at p. 801)—has been applied to some contracts in which a party has promised to take several actions, only some of which are enforceable, a different rule applies to contracts containing *alternative* promises. Our Supreme Court has explained: "[W]here a contract contains two promises which are *in the alternative*, rather than being merely divisible, one of which is within the statute of frauds and the other not, recovery may be had for a breach of the latter." (*Roy v.*

11

*Salisbury* (1942) 21 Cal.2d 176, 183 (*Roy*), italics added.) For example, in *Roy*, the plaintiff alleged that he had agreed to care for a decedent's dog, for a fee, " 'if [the decedent] ever became unable to care said dog, *or*, if he should die.' " (*Id*. at p. 183) The court held that although the promise to care for the dog upon decedent's death was barred by the statute of frauds because it could not be performed within the decedent's lifetime (Civ. Code, § 1624, subd. (a)(5)), the alternative promise to care for the dog if decedent became unable to do so during his lifetime was not barred. Accordingly, because one of the two alternative promises was not within the statute of frauds, "the contract may not be condemned." (*Id*. at p. 183; see also Civ. Code, § 1451 ["If one of the alternative acts required by an obligation is such as the law will not enforce, or becomes unlawful, or impossible of performance, the obligation is to be interpreted as though the other stood alone."]; *Rosenthal v. Perkins* (1898) 123 Cal. 240, 243 [" 'If an agreement is in the alternative, and one branch of the alternative cannot by law be performed, the party is bound to perform the other.' "].)

The present case is analogous to *Roy*. As in that case, the parties did not intend TCA to take *all* the actions alleged in the oral agreement—instead, the plaintiffs allege that in exchange for their donations to the school, TCA promised *either* to continue operating the school with existing funding, *or* to allow its donors to raise additional funds to keep the school operational, *or* to allow the donors to purchase the school, *or* to return the donations to the plaintiffs with interest. There thus was no need to apportion the consideration because TCA's obligation under the contract could be satisfied by any one of the alternative

12

promises. Plaintiffs' contract causes of action, therefore, were not barred by the statute of frauds.

### B. The fourth amended complaint is not a sham pleading.

In the alternative to its statute of frauds claim, TCA asserts that the fourth amended complaint was a "sham pleading" because it omitted the allegations that the Martirosians and Semirdzhyans (but not the Taglyans) had been promised an opportunity to purchase the school. We do not agree. "Under the sham pleading doctrine, a plaintiff cannot avoid allegations that are determinative to a cause of action simply by filing an amended complaint which omits the problematic facts or pleads facts inconsistent with those alleged in the original complaint. The doctrine precludes a plaintiff from amending a complaint to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers." (*Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1248; see also *Smyth v. Berman, supra,* 31 Cal.App.5th at pp. 195–196 [plaintiff "may not 'omit harmful allegations . . . from previous complaints' " unless the plaintiff provides a " 'plausible' " explanation for dropping them].) Here, we have concluded that the alleged option to purchase the school did not render the alleged oral agreements unenforceable under the statute of frauds, and thus the omitted allegations were not "harmful" to plaintiffs' ability to continue this action. The sham pleading doctrine therefore does not apply. (See, e.g., *Dones v. Life Ins. Co. of North America* (2020) 55 Cal.App.5th 665, 688 [sham pleading doctrine did not apply because facts initially pled were not fatal

13

to plaintiff's cause of action and the amendment did not alter the fundamental facts upon which the claim was based].)[5]

## DISPOSITION

The judgment of dismissal is reversed, and the trial court is directed to reinstate the fourth amended complaint and to allow TCA to file an answer.  Plaintiffs are awarded their appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

ADAMS, J.[*]

---

[5]      Having so concluded, we need not address TCA's contentions that the alleged donation receipts do not satisfy the statute of frauds' writing requirement or that plaintiffs failed to allege an unconscionable injury or unjust enrichment sufficient to invoke equitable estoppel.

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.