Filed 11/7/24  Moch v. Agam Properties CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DAVID MOCH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>AGAM PROPERTIES, INC. et al.,<br><br>    Defendants and Respondents. | B322024<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV19511) |

APPEAL from a judgment of the Los Angeles Superior Court, Barbara M. Scheper, Judge.  Affirmed.

David Moch, in pro. per. for Plaintiff and Appellant.

Abdulaziz, Grossbart & Rudman, Kenneth S. Grossbart and Sharice B. Marootian, for Defendants and Respondents.

_____

Plaintiff David Moch appeals an adverse judgment in his breach of contract action against Agam Properties, Inc. (API), Pacifica First National, Inc. (Pacifica) and Giora Agam (collectively Defendants).[1]  The trial court determined the real estate purchase option on which Moch relies expired years before Moch attempted to exercise it.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Moch's Leasehold and Holdover Tenancy

Pacifica purchased Moch's home at a foreclosure sale in November of 2010.  Thereafter, Moch and Vince Motyl, a vice-president of Pacifica, agreed Moch could remain in the home in 2011 as Pacifica's lessee, paying monthly rent of $3600.  Pacifica also extended Moch an option to purchase the home, and agreed that $600 of each month's paid rent up to the time of exercise would be credited against the purchase price.

In February of 2012, Moch signed a new lease for the period January 1 to December 31, 2012 at $3600 per month.  Concurrently, Moch signed a separate written agreement with Pacifica giving him the option to purchase the house for $698,000.  The option agreement recited that it was given for no consideration and that $600 of each month's rent paid prior to exercise, including rent paid in 2011, would be credited against the purchase price.

Moch's purchase option was for a limited period.  Paragraph 1 of the 2012 option agreement states, in pertinent part:  "The Lessee/Optionee has until December 31, 2012 to exercise the purchase option.  If the option is no [*sic*] exercised by December 31, 2012 this offer is null and void and all monies and

---

[1]     Giora Agam is the owner and CEO of API and Pacifica. API is the property management division of Pacifica.

credits are forfeited by the Lessee/Optionee." Paragraph 18 states: "This option to purchase shall be deemed expired if not exercised during the option period, and if not previously terminated, shall automatically expire/terminate on December 31, 2012." It is undisputed that Moch did not exercise the option on or before December 31, 2012.

Moch did not sign a new lease for 2013 or succeeding years. Instead, at the beginning of 2013 Moch sent a letter to Avi Bienenfeld[2] asking to continue his tenancy for an additional year at the same rent. Moch's tenancy continued on those terms though 2013. Thereafter, beginning in December of 2013 and each succeeding December, Scott Radin of API sent Moch a letter offering to extend his tenancy in the succeeding year subject to a rent increase. Each of these annual letters stated that, except for the rent increase, "all other terms and conditions of your tenancy shall remain in full force and effect."

Moch never signed a new option agreement after 2012. However, he continued to write on his rent checks that $600 was for his "option" and the balance for "rent." On February 26, 2014, Radin wrote to Moch stating, in part, "[t]his is also to serve as a reminder that you are on a month to month lease and you do not have a purchase option. Please refrain from adding comments that have to [*sic*] relevance on the memo of your check. Your payment is for rent and will be applied as such." Moch did not respond to Radin's letter but testified that he voiced his objections to the letter in communications with Motyl.

---

[2]     It is not clear from the record whether Mr. Bienenfeld's employer was API or Pacifica.

3

## II.    Moch Attempts to Exercise The Purchase Option

On January 1, 2016, Moch wrote to Motyl and Radin regarding "re-purchase of the property" and inquiring whether "your company can facilitate a loan or advise as to a trusted company who can."  Although the letter does not refer to a purchase option, Moch testified that the purpose of the letter was "to exercise my option to purchase the property."  In a responsive letter dated January 7, 2016, Radin reminded Moch that the option had lapsed:  "As you know your option to purchase the home has long expired along with any rent credits.  Unfortunately you did not exercise the option during the contract period and multiple notices were sent to you confirming."  Radin did, however, allow Moch until June 30, 2016, to purchase the house at a price to be determined after Moch forwarded evidence of sufficient funds to complete the purchase.

On June 30, 2016 – the last day to purchase the house according to Radin's January 7 letter – attorney Cecil McNab sent a letter to Radin stating that Moch was exercising his "option to purchase" the house.  McNab enclosed a letter from a private lender confirming that as of June 29, 2016, $660,000 in "unencumbered liquid funds" was available to Moch.  By letter dated July 7, 2016, Radin responded that "Mr. Moch's option to purchase the property . . . expired long before January 7, 2016," that the house was no longer for sale, and that Mr. Moch could remain as a tenant if he wished.

On June 4, 2019, Moch filed this action for specific performance and for breach of contract.  Moch alleged in his verified complaint that Defendants had breached an agreement to sell him the house.

4

## III. The Trial and Judgment in Defendants' Favor

Moch's case proceeded to a bench trial in January of 2022. The trial focused on whether Moch's option was in effect in 2016, when Moch attempted to exercise it. Moch testified that prior to 2016, Motyl had orally assured him the option remained in effect and that he could disregard Radin's letters to the contrary. Moch offered no documentary evidence of his discussions with Motyl, who was unavailable to testify because he had died before Moch filed his complaint. Moch also denied that the option expired on December 31, 2012. Instead, he testified, citing his conversations with Motyl, that $600 of each month's rent during his month-to-month tenancy beginning in 2013 was payment for the option. Finally, Moch contended the option was coextensive with the lease, and the lease remained in effect after 2012, citing Radin's annual rent increase letters stating that the terms of his tenancy other than the amount of rent "will remain in full force and effect."

Giora Agam, his son Nathan, and Radin all testified for Defendants. Radin, who had drafted both the 2012 lease and the 2012 option agreement, testified that in 2013 and succeeding years, Moch's entire payment was for rent because his option had expired. He also testified that the "terms" of Moch's month-to-month tenancy, besides rent, were "who is responsible for the utilities, who is responsible for the maintenance, who needs to report to who regarding issue with the house. Late fees. Things to that effect." The option was "not even referred to in the lease."

After the parties submitted closing briefs, the trial court issued a proposed statement of decision in Defendants' favor. The trial court rejected as "untenable" Moch's contention that the option remained in effect after December 31, 2012. Instead, the

5

court found that both the lease and the option expired by their own terms on December 31, 2012.  The court deemed Moch's testimony that Motyl orally extended the option "not credible," noting that Moch "did not offer a single email or letter confirming Motyl's alleged assurances."  It also rejected Moch's contention that he paid $600 each month to keep the option in effect after 2012, relying on Radin's "more reliable" testimony that all Moch's payments were for rent.  Finally, the trial court rejected Moch's contention that the option was a term of Moch's tenancy that survived the expiration of his 2012 lease, finding that "the option was not a term of the lease but a separate agreement altogether."  The trial court entered judgment in defendant's favor, and Moch filed a timely notice of appeal.

## DISCUSSION

## I.    The Trial Court Committed No Error in Finding Moch's Option Expired at the End of 2012

As he did in the trial court, Moch argues on appeal that his option remained in effect after December 31, 2012, that he exercised that option in 2016, and that he is entitled to specific performance in conformance with the option.  Our analysis begins with the trial court's finding that Moch's option expired on December 31, 2012.  Where "[t]he proper interpretation of the parties' written agreement turns not only on the language of the agreement but on the proper resolution of conflicting extrinsic evidence and upon an evaluation of witness credibility . . . we are bound by the trial court's construction of the agreement if it is reasonably susceptible to that interpretation."  (*Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 134; see also *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 ["when, as

6

here, ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence, that credibility determination and the interpretation of the contract are questions of fact"].)

Before the trial court found the option expired on December 31, 2012, it considered testimony by plaintiff, Giora Agam and Radin, and made credibility findings. Specifically, the statement of decision recites that the court found not credible Moch's testimony that Motyl orally extended his option, but credited Radin's testimony that the option expired according to its terms, and Radin's and Nathan Agam's testimony that Motyl did not have authority to extend the option. Based on its assessment of the parol evidence, the trial court determined that Moch's option expired on December 31, 2012.

Because the trial court relied on parol evidence and made credibility findings, we defer to its interpretation of the option agreement provided that interpretation is "reasonable." Here, the trial court's interpretation of the 2012 option agreement is "reasonable" because it comports with the nature of option agreements in general and with the plain language of the option in question, and is supported by substantial evidence. "Ordinarily an option is given for a specified period, and it must be exercised within the period." (1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 174.) "Upon the lapse of that time the matter is completely ended and the offer is withdrawn." (*Auslen v. Johnson* (1953) 118 Cal.App.2d 319, 322.) Moch's option agreement states in several places that it expires on December 31, 2012. After that date, Defendants consistently asserted, in writing, that the option had expired. Other than his own testimony, which the trial court did not believe, Moch offered

no evidence controverting the plain language of the option agreement.

## II.   Moch's Remaining Arguments

Moch contends that beginning in 2013 he paid $600 each month to keep the option in effect.  The trial court instead found "more reliable" Radin's testimony that all payments were for rent.  We will not disturb the trial court's finding of fact:  " 'we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.' " (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518.)

Moch's further argues that the 2012 lease, and therefore the option, remained in effect because he continued occupying the house on the terms of the 2012 lease.  He relies on paragraph 9 of the option agreement, defining the option period as "expiring on termination of the lease."  The trial court, however, found the option expired at the end of 2012 and was a separate agreement rather than a term of the 2012 lease, and it credited Radin's testimony that the option was not among the terms of Moch's month-to-month tenancy.  We will not second-guess the trial court's findings of fact and credibility determinations.  We further observe that, after Moch's lease ended in 2012, a holdover tenancy began on January 1, 2013.  "When a lease expires but the tenant remains in possession, the 'relationship' of the landlord and tenant 'changes.'  [Citation.]  The 'lessor-lessee relationship' based on ' "privity of contract" ' ends, and a new 'landlord'-'tenant' relationship based on ' "privity of estate" ' springs into being by the operation of law." (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 192; see also Civ. Code, § 1945 [where a lessee remains in

8

possession after the lease term ends, the parties are presumed to have entered into a tenancy at sufferance "on the same terms and for the same time, not exceeding one month when the rent is payable monthly, nor in any case one year"].)

"[T]he only terms from the expired lease that are presumed to carry forward into a holdover tenancy are the 'essential' terms of that lease [citation]—that is, the 'term[s] or condition[s] of the demise' [citation] such as the ' "amount and time of payment of rent." ' " (*Smyth v. Berman, supra,* 31 Cal.App.5th at p. 192.) Our Supreme Court long ago held that a purchase option was not an "essential term" of a lease and did not continue in effect during the holdover period following the end of the lease. (*Spaulding v. Yovino-Young* (1947) 30 Cal.2d 138, 141-142 (*Spaulding*).)

The facts in *Spaulding* are remarkably similar to this case: like Moch, the plaintiffs in *Spaulding* were holdover tenants who sued for specific performance of a purchase option they attempted to exercise after the expiration of a fixed-term lease. The plaintiffs in *Spaulding* relied on a holdover clause in the lease stating that a month-to-month tenancy would be "on the same terms and conditions" as the written lease, just as Moch relies on Radin's annual rent increase letters stating that "all other terms of your tenancy shall remain in full force and effect." Citing Civil Code section 1945, the Supreme Court rejected this argument: "[t]he provision in the 'hold-over' clause that the month-to-month tenancy was to be 'on the same terms and conditions' as stated in the lease does not avail plaintiffs, for continued occupancy of the property on that basis by the former lessees was no more than the law would imply in the absence of such 'hold-over' clause." (*Spaulding, supra,* 30 Cal.2d at pp. 141-142.)

9

Just as the plaintiffs in *Spaulding* could not rely on the holdover clause in an expired lease, Moch cannot rely on Radin's annual rent increase letters stating that the terms in his "tenancy" – not his lease – remain in effect.  Otherwise, the landowner would indefinitely be bound to accept an offer from a holdover tenant at " 'a fixed price which may have become inadequate by lapse of time.' " (*Smyth v. Berman, supra,* 31 Cal.App.5th at p. 195; *Spaulding, supra*, 30 Cal.2d at pp. 143-144.)  Because Moch's option to purchase the house expired on December 31, 2012, he could not exercise that option in 2016. The trial court committed no error in concluding Moch was not entitled to specific performance.

## DISPOSITION

We affirm the judgment.  Defendants are awarded their costs on appeal.


DAVIS, J.*

We Concur:



BAKER, Acting P. J.



MOOR, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6 of the California Constitution.

10