Filed 7/31/25 Platzner v. Oliver CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ADAM PLATZNER, | B333113 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22SMCV00739) |
| v. | |
| THOMAS E. OLIVER et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Edward B. Moreton, Jr., Judge. Affirmed.

Ross LLP, Peter W. Ross and Richard A. Schwartz for Plaintiff and Appellant.

Reed Smith, Kasey J. Curtis, Carla M. Wirtschafter and Charles P. Hyun for Defendants and Respondents.

_____

Plaintiff Adam Platzner appeals the trial court's dismissal of his lawsuit for breach of contract and related causes of action. We perceive no error, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Adam Platzner "is a successful serial entrepreneur."[1] His erstwhile friends, Defendants Thomas (Tommy) Oliver and Codie Elaine Oliver,[2] are filmmakers. Tommy is the chief executive officer and part owner of Defendants T. Edward Oliver, Inc., Confluential Films, LLC, Confluential Content, Inc., Confluential Productions, LLC, Confluential Development, LLC, and the Confluential Company, LLC (collectively, the Confluential Entities). Tommy is also the chief financial officer of Defendant Black Love, Inc., of which Codie is the chief executive officer and part owner. Defendant Black Love Global, LLC, is another business entity. Platzner refers to Black Love, Inc., and Black Love Global, LLC collectively as the Black Love Entities.

Platzner alleged he and the Olivers reached a formal, oral agreement to work together on July 24, 2019, which the Olivers later breached. Whether Platzner's complaints sufficiently alleged that agreement amounted to an enforceable contract

---

[1]    In recounting the background, we accept as true the well-pleaded facts of Platzner's second amended complaint to the extent they do not contradict his earlier complaints. (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1189, fn. 1 (*Aryeh*) [we do "not . . . disregard contrary allegations in earlier complaints to the extent they are pertinent"].)

[2]    When we refer to Tommy or Codie individually, we will use their first names, as do the parties, for ease of reference. No disrespect is intended. We refer to Tommy and Codie collectively as the Olivers.

under California law is the crux of this appeal. We summarize the complaints separately because some of the relevant factual allegations have evolved over time.

## I. The Original Complaint

Platzner originally filed this action for breach of contract and related causes in May 2022 against the Olivers and most of the business entities listed above (excluding Black Love Global, LLC and Confluential Films, LLC). After those defendants demurred, Platzner elected to file a first amended complaint.

## II. The First Amended Complaint (FAC)

Platzner filed the FAC on March 8, 2023. He sued the same defendants as in the original complaint and added Confluential Films, LLC. Platzner also added Black Love Global, LLC as a defendant in the body of the FAC, but not the caption. He sought relief for the following causes of action: (1) breach of contract; (2) breach of fiduciary duty; (3) conversion; (4) money had and received; (5) quantum meruit; (6) accounting; (7) breach of implied partnership agreement; (8) breach of implied joint venture agreement; and (9) breach of implied covenant of good faith and fair dealing.

The FAC alleged Tommy had sought Platzner's assistance in 2014 and 2018 to promote Tommy and his films to Platzner's "extensive network of high-level friends and colleagues" and to introduce the Olivers to some of those contacts. Although Platzner had previously resisted Tommy's entreaties to pursue a business relationship, by January 2019, "Platzner agreed to go into business with the Olivers"; Tommy and Platzner thus began discussing a strategy for Tommy to form a new business entity "to most effectively leverage Platzner's network of contacts and access millions of dollars in financing."

The Olivers and Platzner "negotiated a deal over the course of several months. The Olivers agreed to bring Platzner on as a partner, with the title Partner and Vice Chairman, and granted him 15% equity ownership in the new company that would be called Confluential Content, Inc. and 10% equity ownership in Black Love. Further, Platzner would have a 50% interest in any new ventures or entities created with the Olivers. Platzner would have a seat on the board of Confluential Content and a modest salary. Platzner was also entitled to an Executive Producer credit on each of the projects the Confluential Entities released. [¶] . . . Platzner accepted these terms by a handshake with . . . the Olivers present on July 24, 2019."

After the parties made that oral agreement, they "clearly memorializ[ed] their respective rights and obligations pursuant to the handshake deal in an email dated July 26, 2019." The FAC defines that e-mail memorialization as "the '2019 Agreement.'" The parties, in a one-page bulleted list, "confirmed the following terms–covering all of the material terms–*verbatim*:

- "• 'Parties: Adam Platzner or his loan out company and Tommy & Codie Oliver, for all companies described below.
- "• 'Term: 3 years. Extensions on mutual consent.
- "• 'Title: Partner & Vice Chairman with Executive Producer credit (subject to network/studio approval) on all projects.
- "• 'Base Salary: $300,000 per year[.]
- "• 'Expenses reviewed monthly, but not to exceed $3,000 per month w/o prior approval[.]
- "• **'15% Equity ownership in the new Confluential entity [Confluential Content, Inc.,] and 10%**

**Equity ownership in Black Love Productions & Black Love X.**

"• 'Equity fully vested upon first day of employment as follows, 5% Confluential and 2.5% for Black Love entities.

"• 'The balance will vest quarterly after a 1-year cliff.

"• 'Equity in a given company fully vests on sale of said company regardless of when that occurs[.]

"• 'All Equity ownership to be provided in a tax advantaged method[.]

"• 'Bonus (Trust)

"• 'Expectation is $0 bonus for at least the first two years[.]

"• 'New Ventures

"• 'All new ventures are 50/50 as between Tommy and [Platzner], investor's share comes off the top.

"• 'Terms of compensation to be agreed upon at the time of formation.

"• 'Benefits

"• '[H]ealth insurance.' " (Original boldface.)

"The parties agreed that the terms laid out in their email correspondence reflected the correct terms of their agreement."

Afterward, Platzner moved to Los Angeles and began working with the Olivers. The Olivers publicly referred to him as their " 'partner.' " Nevertheless, trouble arose when Platzner quarantined with his family in Florida in mid-2020. Tommy

claimed "Platzner was not performing his duties, even though (i) Tommy had previously approved Platzner's move, (ii) there was no in-person interaction required at that time, and (iii) location was never a term of any agreement." Tommy reduced Platzner's salary and his health insurance stipend.

Despite those difficulties, "Platzner worked diligently" to identify "potential partners" to provide "operational financing" for the launch of Confluential Content, Inc., and he successfully contributed to obtaining important equity investments. Nevertheless, the business relationship between Platzner and the Olivers deteriorated, with the Olivers ultimately "refus[ing] to recognize Platzner's interest in the Confluential Entities," "tak[ing] his equity interest for themselves," and "refus[ing] to pay Platzner the compensation [they] owed him."

## III. The FAC Is Dismissed with Leave to Amend

Defendants demurred to the FAC, and the trial court dismissed many of Platzner's causes of action with leave to amend. As relevant to this appeal, the court concluded "the July 2019 email should be understood to be at most, an unenforceable agreement to agree."[3] At defendants' request, the trial court took judicial notice of e-mail correspondence between Platzner and Tommy on July 25 and 26, 2019. The correspondence comprised three e-mails: (1) a July 25 e-mail from Platzner to Tommy; (2) a July 26 e-mail reply from Tommy to Platzner; and (3) a July 26 further e-mail reply from Platzner to Tommy. The FAC expressly

---

[3]      That reasoning was the foundation to dismiss, inter alia, the causes of action for breach of contract, money had and received, and breach of implied covenant of good faith and fair dealing, which are the only causes remaining at issue in this appeal.

6

quoted the July 26 e-mail from Tommy. The court identified language in those e-mails indicating "the parties contemplated a final agreement to be drafted by lawyers," and that "agreement was never memorialized." Even though the trial court determined no contract had been created, it allowed Platzner's quantum meruit cause of action against the Olivers to proceed.

## IV.    The Second Amended Complaint (SAC)

On June 9, 2023, Platzner filed his SAC. He named as defendants all the individuals and entities named in the FAC. He dropped his cause of action for an accounting but otherwise re-alleged the same causes of action.

The SAC made many of the same factual allegations regarding the parties' relationship and the alleged breach, but included new allegations regarding the contract terms. We will not attempt to identify the myriad differences between the FAC and the SAC, but we highlight a few. Although the SAC continued to allege the parties reached a formal, oral agreement on July 24, 2019, it largely abandoned the FAC's reliance on the parties' July 2019 e-mail correspondence as a source of the material terms of the contract. The SAC now alleged the parties merely "put several of the terms that would govern Platzner's employment relationship (in addition to a few non-material terms) in writing" in the July 26 e-mail exchange. The SAC alleged the July 24, 2019, oral agreement (rather than the e-mail memorialization) was "the '2019 Agreement.' " The SAC further alleged "the parties agreed that the 2019 Agreement [e.g., the oral agreement] took immediate effect."

The list of material terms of the 2019 Agreement in the SAC did not quote from and was not premised upon the parties' July 2019 e-mail correspondence. There were several important

7

differences between the material terms alleged in the FAC and the SAC.

First, although the new list included several terms that had also appeared in the FAC,[4] it omitted some terms the FAC had previously alleged were material. For example, the new list did not include the " 'Benefits,' " " 'Base Salary,' " or " 'Bonus' " Platzner would receive. And while the FAC had alleged the " 'Parties: Adam Platzner or his loan out company and Tommy & Codie' " was a material term, the SAC now identified as a material term "[t]he parties to the agreement were Adam Platzner on the one hand and Tommy and Codie . . . on the other hand."

Second, the SAC added new material terms to the list that had not appeared in the FAC, including: (1) "Platzner would move to Los Angeles, California"; (2) "Platzner would devote his time to attract capital and investment opportunities on behalf of the existing Confluential business enterprise as well as Black Love"; (3) "Platzner would sit on the board of directors of Confluential Content[, Inc.]"; and (4) "the [oral] agreement would immediately take effect while the long form contract was being prepared" by the Olivers' lawyer.

## V. The SAC Is Dismissed

Defendants again demurred to all causes of action. The trial court dismissed without leave to amend the causes of action at issue in this appeal (breach of contract, money had and received, and breach of implied covenant of good faith and fair

---

[4] For example, Platzner's equity stakes in several business entities and new ventures.

8

dealing).[5] After taking judicial notice of the July 2019 e-mails, the original complaint, and the FAC, the trial court ruled the SAC was a sham pleading. It reasoned the allegations of the SAC were inconsistent with the earlier allegations of both the original complaint and the FAC "that the July Emails represent the agreement and included all material terms." The court therefore "read [that] original defect into the SAC . . . and disregard[ed] the new and contradictory terms." Because the court had already determined the July 2019 e-mails were "an unenforceable agreement to agree," it dismissed the causes of action based upon the alleged contract without leave to amend.

Rather than amending his remaining causes of action or proceeding on the quantum meruit claim, Platzner voluntarily requested his SAC be dismissed with prejudice. Judgment was entered on November 9, 2023. Platzner timely appealed. (See Cal. Rules of Court, rule 8.104(a)(1)(A), (d)(1).)

---

[5]     Likewise, it dismissed without leave to amend the conversion cause of action against all defendants, and the following causes against the Black Love Entities and Confluential Entities: (1) breach of fiduciary duty; (2) breach of implied partnership agreement; and (3) breach of implied joint venture agreement.

The causes of action against the Olivers for breach of fiduciary duty, breach of implied partnership agreement, and breach of implied joint venture agreement were dismissed with leave to amend. The trial court allowed the quantum meruit claim against the Olivers to proceed.

9

## DISCUSSION

### I. The Trial Court Properly Took Judicial Notice of the July 2019 E-mail Correspondence

Platzner argues the trial court should not have taken judicial notice of the three July 2019 e-mails because his July 26 e-mail was not referenced in the FAC.[6] A trial court's decision to take judicial notice is reviewed for abuse of discretion. (See *In re Social Services Payment Cases* (2008) 166 Cal.App.4th 1249, 1271.) Abuse occurs when a court exercises its discretion " ' "in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Williams* (2013) 58 Cal.4th 197, 270–271.) Under that standard, "as long as there exists 'a reasonable or even fairly debatable justification . . . for the [trial court's decision], such action will not be here set aside.' " (*Gonzales v. Nork* (1978) 20 Cal.3d 500, 507.)

A court may take judicial notice of "written instruments [that] are the foundation of a claim or defense and are incorporated in a pleading." (*Columbia Casualty Co. v. Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457, 468; see *Salvaty v. Falcon Cable Television* (1985) 165 Cal.App.3d 798, 800, fn. 1 [where the complaint "referred repeatedly to the agreement," the defendants "were entitled to present the trial court with the complete document"]; cf. *Johnson Rancho etc. Dist. v. County of Yuba* (1963) 223 Cal.App.2d 681, 684 [judicial notice inappropriate where "the written instrument was [not] made a part of the complaint"].) Platzner essentially concedes a court

---

[6] Defendants argue Platzner forfeited this argument by failing to oppose their request for judicial notice. For purposes of this opinion, we assume he adequately preserved his challenge by objecting at oral argument in the trial court.

may judicially notice a document " 'referenced in the complaint,' " but argues his "July 26, 2019[,] response to Tommy[]" was not so referenced.[7]

We disagree. The trial court's decision to judicially notice the e-mails because they were "referenced in the [FAC]" was not arbitrary, capricious, or absurd. On the contrary, the FAC expressly quoted from Tommy's July 26 e-mail, which was itself a response to Platzner's July 25 e-mail. The FAC further alleged Platzner and Tommy: (1) "clearly memorializ[ed] their respective rights and obligations . . . in an email dated July 26, 2019," and defined that as "the '2019 Agreement' "; (2) "confirmed the following terms" quoted from Tommy's e-mail; and (3) "agreed that the terms laid out in their email correspondence reflected the correct terms of their agreement." For Platzner and Tommy to "memorializ[e] their respective rights and obligations . . . in an email dated July 26, 2019," each must have written e-mails on that date. The FAC plainly alleges "Platzner . . . confirmed" the terms of Tommy's e-mail–e.g., by his July 26 e-mail response.

The FAC expressly referenced the parties' July e-mail correspondence, and the trial court properly took judicial notice of them.[8]

---

[7] Platzner has not argued his July 25 e-mail was not referenced in the FAC, so we do not address that issue. (See *Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115 ["An appellant . . . forfeits an issue by failing to raise it in his or her opening brief."].)

[8] When the trial court considered the demurrer to the SAC, it properly noticed the FAC (and the July 2019 e-mails, which were referenced therein). Platzner does not argue otherwise.

## II. The Trial Court Did Not Err in Dismissing the FAC

Before we analyze the trial court's ruling dismissing the SAC, we first consider its dismissal of the FAC, which is incorporated into the dismissal of the SAC. The trial court dismissed Platzner's contract-based causes of action pled in the FAC because it determined they failed to adequately plead the parties mutually consented to all material terms of the alleged contract as a matter of law. (See *Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 213 (*Bustamante*) [no enforceable contract where the parties had only "an 'agreement to agree' " because of a lack of mutual consent].)

As an initial matter, we address Platzner's repeated assertions the trial court misidentified the relevant contract as the July 2019 e-mails. There was no error. First, the FAC expressly defined the " '2019 Agreement' " as the "email dated July 26, 2019" which "clearly memorializ[ed] [the parties'] respective rights and obligations pursuant to the handshake deal." Platzner had therefore alleged the July 2019 e-mails were coextensive with the July 24 oral agreement. Second, in its later order dismissing the SAC, the trial court confirmed it understood Platzner had consistently alleged the contract was an oral agreement reached on July 24, 2019. Because Platzner's FAC alleged "the terms laid out in [the parties'] email correspondence reflected the correct terms of their agreement," it was appropriate for the trial court to analyze the terms of the e-mail correspondence as reflecting the terms of the July 24, 2019, oral agreement.

### A. Standard of Review

Orders sustaining a demurrer are reviewed de novo. (*Coastside Fishing Club v. California Resources Agency* (2008)

12

158 Cal.App.4th 1183, 1190.) "[W]e may affirm on any ground supported by the record . . . ." (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960 (*Doe*).)

"We must accept as true all 'well-pleaded facts' in the complaint, but need not accept allegations containing 'legal conclusions,' 'adjectival descriptions' [citation] or 'unsupported speculation.' " (*Doe*, *supra*, 247 Cal.App.4th at p. 960; *Aryeh*, *supra*, 55 Cal.4th at p. 1189, fn. 1 ["we accept as true the well-pleaded facts in the operative complaint"].)

"We also accept as true all materials properly ' "subject to judicial notice," ' and disregard any allegations in the operative complaint inconsistent with the judicially noticed facts." (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 191 (*Smyth*).) Nevertheless, " ' "[a] demurrer is simply not the appropriate procedure for determining the truth of disputed facts," ' " so judicially noticed documents are dispositive " 'only . . . where there . . . cannot be a factual dispute concerning that which is sought to be judicially noticed.' " (*Panterra GP, Inc. v. Superior Court* (2022) 74 Cal.App.5th 697, 710–711.)

## B. A Contract Requires the Parties' Mutual Consent to All Material Terms

In considering a demurrer, a court must "determine whether the complaint states facts sufficient to constitute a cause of action . . . ." (*American Employers Group, Inc. v. Employment Development Dept.* (2007) 154 Cal.App.4th 836, 844 (*American Employers Group*).) "[F]or breach of contract, a party must plead the existence of a contract, his or her performance of the contract or excuse for nonperformance, the defendant's breach and resulting damage." (*Harris v. Rudin, Richman & Appel* (1999)

13

74 Cal.App.4th 299, 307.)[9] The trial court properly concluded Platzner's FAC failed to allege the July 24, 2019, oral agreement amounted to a contract under California law.

All contracts require mutual consent by the contracting parties. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811 (*Weddington Productions*) [mutual consent is an essential element of a contract]; see also Civ. Code, §§ 1550, 1565.) "The concept of mutual consent" encompasses a broad "range of specific issues, including whether the parties consented to all *material* . . . terms and whether those terms 'were reasonably well defined and certain.' " (*Eagle Fire & Water Restoration, Inc. v. City of Dinuba* (2024) 102 Cal.App.5th 448, 468 (*Eagle Fire*); see also *ibid.* [defining material term].) If the parties fail "to reach a meeting of the minds on all material points," an enforceable contract is not formed "even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract." (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 359, italics omitted.) Likewise, if the parties made only "an 'agreement to agree,' " there is no mutual consent and therefore no enforceable contract. (*Bustamante*, *supra*, 141 Cal.App.4th at p. 213.)

We evaluate mutual consent " 'under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts.' "

---

[9] The other causes of action at issue on appeal are derivative of breach of contract. (See *Smith v. International Brotherhood of Electrical Workers* (2003) 109 Cal.App.4th 1637, 1644, fn. 3 [breach of the covenant of good faith and fair dealing]; *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394 [money had and received].) Platzner does not argue otherwise.

14

(*Bustamante, supra*, 141 Cal.App.4th at p. 208.) If the allegations of the complaint and the judicially noticed facts "admit[] of more than one inference, it is for the trier of fact to determine whether the contract actually existed." (*Ibid.*) "But if the material facts are certain or undisputed, the existence of a contract is a question for the court to decide." (*Ibid.*; see also *Smyth, supra*, 31 Cal.App.5th at p. 195 [court can resolve parties' intent when the complaint and judicially noticed documents "point[ed] to one conclusion"].)

Platzner argues the trial court could not interpret what the parties meant by their e-mails. While a court cannot "construe [an] ambiguous [contract] in a manner contrary to the plaintiff's interpretation as alleged in the complaint," (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 115 (*Fremont*)), the trial court did not do so here. The FAC expressly alleged "the terms laid out in their email correspondence reflected the correct terms of their agreement" and defined the " '2019 Agreement' " as the e-mail correspondence. Platzner "relied on the [e-mails] as the basis for his cause of action but failed to allege any special meaning." (*Id.* at p. 118.) The trial court therefore appropriately examined the e-mails to determine if they supported or contradicted the conclusory allegation that an enforceable contract had been formed. (*Legg v. Mutual Benefit Health & Accident Assn.* (1960) 184 Cal.App.2d 482, 488 [" 'a complaint otherwise good on its face is nevertheless subject to demurrer when facts judicially noticed render it defective. . . . "The theory is that the pleader should not be allowed to bypass a demurrer by suppressing facts which the court will judicially notice" ' "].)

15

Because the FAC and the July 2019 e-mails point to only one conclusion–the parties did not mutually consent to all alleged material terms of the oral agreement–the trial court correctly sustained the demurrer.

## C.     The FAC Pled Certain Terms Were Material

A term is material to a contract when it is "essential to the existence of an enforceable agreement," and that " 'depends on its relative importance to the parties and whether its absence would make enforcing the remainder of the contract unfair to either party.' " (*Eagle Fire, supra,* 102 Cal.App.5th at p. 468.) Here, the FAC expressly alleged "all of the material terms" of the 2019 Agreement in a one-page bulleted list. The list quoted a number of items from the July 2019 e-mails, including the identities of the contracting " 'Parties,' " the " '[t]erms of [Platzner's] compensation' " from any " 'New Ventures' " to be formed, and the employment " 'Benefits' " (" 'health insurance' ") Platzner would receive. The list did not include any of Platzner's obligations or duties.

Because we must accept the allegations of the FAC as true when considering a demurrer (*Aryeh, supra*, 55 Cal.4th at p. 1189, fn. 1), we accept the list in the FAC "cover[ed] all of the material terms" of the alleged contract. The trial court correctly did likewise. Thus, we reject Platzner's belated attempts to recharacterize some of those terms[10] now as immaterial.

---

[10]     For example, the terms of Platzner's compensation for new ventures and the term relating to his "[e]mployment benefits."

16

### D.    The July 2019 E-mails Show the Parties Did Not Mutually Consent to All Material Terms

The trial court determined the July 2019 e-mails showed the parties had not reached a final agreement and instead "contemplated a final agreement to be drafted by lawyers." The court pointed out Platzner characterized the items listed in his July 25 e-mail as " 'an outline of what we discussed' which he hoped 'would be helpful to [Tommy's] lawyer.' " The court noted that in the same e-mail, Platzner expressly acknowledged certain terms "were to be 'agreed upon at the time of formation' and 'negotiated in the final agreement.' " When Tommy made changes to the proposed list in the July 26 e-mail response, Platzner "responded that he 'look[ed] forward to putting the agreement in place.' "

In reviewing the trial court's conclusion, our task is not to consider individual phrases from the agreement in isolation. Rather, we read the allegations of the complaint and the judicially noticed facts as whole, in context, and give them a reasonable construction. (See *American Employers Group, supra,* 154 Cal.App.4th at p. 844 ["We . . . give the complaint a reasonable interpretation, reading it as a whole and considering its parts in context."]; *Smyth, supra*, 31 Cal.App.5th at p. 191 ["[w]e . . . accept as true all materials properly ' "subject to judicial notice" ' "].) We are therefore unpersuaded by Platzner's argument that isolated phrases from the July 2019 e-mails, standing alone, could possibly be construed in a manner consistent with the existence of a contract.

On the contrary, considering the FAC and the judicially noticed e-mails, we agree with the trial court that Platzner did not sufficiently allege the parties mutually consented to the same

17

material terms in the July 24 oral agreement. First, Platzner's July 25 e-mail describing his list of the agreement's terms as an "outline" to help the Olivers' lawyer "evidences an expectation that the terms set forth in the [e-mail] were subject to [the attorney's] approval." (*Beck v. American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1563, overruled by statute on other grounds as stated in *Epic Medical Management, LLC v. Paquette* (2015) 244 Cal.App.4th 504, 516.) That is reinforced by Platzner's e-mail on July 26 stating he "[l]ook[ed] forward to putting the agreement in place," plainly indicating an agreement was not yet in place. (See *ibid.*)

Second, Platzner's own e-mail on July 25 shows he did not believe the parties had reached a "final agreement," because he expressly anticipated negotiations would continue as to certain unsettled terms until the final agreement was reached. Specifically, he wrote his "[f]ull benefits package [was] to be negotiated in the final agreement." As we have explained, the FAC pled that Platzner's " 'Benefits' " were a material term of the parties' agreement. That Platzner stated on July 25 no final agreement had been reached on that allegedly material term undermines the FAC's contrary (and conclusory) allegation the parties made a binding oral contract on July 24.[11]

---

[11] Platzner points out that in the same July 25 e-mail, he told Tommy " 'Glad we figured it out,' " and he argues that implies the parties believed "the material terms [of the agreement] had been settled." Even if that individual statement could be ambiguous in some circumstances, it is not ambiguous here in light of the FAC's allegations and the rest of the e-mail correspondence indicating the parties had not finalized all material terms.

18

Platzner argues his statement on July 26 that he "look[ed] forward to putting the agreement in place" was "merely related to formal documentation, and that he very much understood the deal to have already been finalized."[12] We agree with Platzner that "when the respective parties orally agree upon *all of the terms* and conditions of an agreement with the *mutual intention* that it shall thereupon become binding, the mere fact that a formal written agreement to the same effect is to be prepared and signed does not alter the binding validity of the oral agreement." (*Columbia Pictures Corp. v. De Toth* (1948) 87 Cal.App.2d 620, 629, italics added.) But here, the July 2019 e-mails show the parties had not "agree[d] upon all of the terms and conditions" in the oral agreement, let alone they did so "with the mutual intention that [the agreement] bec[a]me binding." (*Ibid.*) Moreover, as we explain in further detail in part E., *post*, the FAC alleges material terms of the agreement remained undecided at the time of the July 2019 e-mails. That also supports the conclusion the oral agreement on July 24 was not final.

### E. The FAC Itself Alleges Some Material Terms Were Not Finalized

The trial court partially premised its conclusion the parties had reached an "agreement to agree" on "certain compensation terms" in the agreement that had not been finalized. We agree that on the face of the complaint, material terms of the agreement had not been finalized.

---

[12] Platzner's FAC did not mention that statement and did not allege it related only to "formal documentation."

First, as of July 26, the parties to the contract were still undecided: it had not been determined whether the Olivers were contracting with Platzner himself "or his loan out company." That plainly undermines Platzner's claim an enforceable oral contract had been reached on July 24. Platzner does not dispute that the identity of the parties to a contract is material–nor could he, particularly when he expressly pled the " 'Parties' " was among "the material terms." (See *Weddington Productions, supra,* 60 Cal.App.4th at pp. 812–813 [" '[t]he material terms of a loan include the identity of the lender and borrower' "].)

Platzner's primary response is we cannot consider that uncertain term because Defendants did not identify it in their demurrer. We disagree. While Platzner is correct an appeals court "will affirm the judgment if proper on any grounds stated in the demurrer," (*Shaw v. Los Angeles Unified School Dist.* (2023) 95 Cal.App.5th 740, 754), that refers to "[t]he grounds . . . listed in Code of Civil Procedure section 430.10, including . . . the failure to state facts sufficient to constitute a cause of action" (*Fremont, supra,* 148 Cal.App.4th at p. 111). That Defendants may not have highlighted that uncertain contract term does not prevent us from considering it in affirming the trial court's dismissal. (See *Doe, supra,* 247 Cal.App.4th at p. 960 ["[W]e may affirm on any ground supported by the record. . . ."].)

In the alternative, Platzner argues the uncertainty in identifying the contracting parties is irrelevant because he "envisioned an *amendment*" to replace himself with his loan out company. But in reviewing a demurrer, we review the well-pleaded facts of the operative complaint and the judicially noticed facts, and Platzner has not identified where he alleged this understanding about an amendment. (See *Doe, supra,*

20

247 Cal.App.4th at p. 960.) Platzner also argues he can "enforce the agreement as a third party beneficiary," but we fail to see how that is relevant to whether the identity of the parties was uncertain in July 2019.

Second, as of July 26, the parties had not yet agreed upon Platzner's " '[t]erms of compensation' " for any " '[n]ew [v]entures.' " As we have already explained, the FAC alleged that was a material term of the contract.

Platzner argues the agreement was simply " 'preliminary' " and thus "enforceable notwithstanding the absence of a term or a promise to further negotiate." He relies upon *Herman v. County of Los Angeles* (2002) 98 Cal.App.4th 484, 488, for the notion parties may agree "to cross certain bridges when they are reached," but that case does not help Platzner. There, the parties had agreed "if an MTA officer was not hired by the County as a deputy sheriff the parties would meet and reach a mutual agreement on the placement of such a person in some other employment." (*Ibid.*) They had also "agreed that if they could not reach accord on the placement of a former MTA officer after a good faith effort to the resolve the dispute[,] they would submit the matter to mediation." (*Ibid.*) The court determined that was a sufficiently definite agreement to be enforceable, unlike one in which the parties "reserved for future agreement the question of what to do with former MTA police officers who did not pass the sheriff's personnel review process." (*Ibid.*) Platzner does not explain why his agreement, which left the "[t]erms of compensation to be agreed upon," is sufficiently similar to the one reached in *Herman*. On the contrary, we see dispositive distinctions: the provision here neither cabins the scope of the

21

parties' future negotiations nor provides next steps if and when those negotiations are unsuccessful.

Platzner's citation of *Wong v. Di Grazia* (1963) 60 Cal.2d 525, also does not assist him. The Supreme Court there noted that "[a] minor possible ground of disagreement in an otherwise complete agreement will not render the agreement uncertain. 'Where the matters left for future agreement are unessential, each party will be forced to accept a reasonable determination of the unsettled point. . . .' " (*Id.* at p. 539.) Because Platzner alleged his compensation from new ventures was a material term of the contract, it was plainly not "unessential."

Those examples, apparent on the face of the FAC, show material terms of the alleged agreement remained undecided, and they further support the trial court's conclusion the parties' July 24 oral agreement was not final.[13]

---

[13] Although not raised by the parties, we also note the FAC's list of "all of the material terms" omits any mention of Platzner's contractual obligations. While other parts of the FAC allege he agreed to "position[] Confluential Content to raise critical financing and obtain access to reputable filmmakers and studios," the FAC does not allege those are *material terms* of the July 24 agreement. That further underscores the trial court's conclusion the July 24 agreement was unenforceable. (See *Bustamante*, *supra*, 141 Cal.App.4th at p. 209 [" '[i]f . . . a supposed "contract" does not provide a basis for determining what obligations the parties have agreed to, . . . there is no contract' "].)

Platzner's later amendment adding as material terms his purported obligations (to "move to Los Angeles" and "devote his time to attract capital and investment opportunities") suggests he recognized the FAC's deficiency in that regard.

**F.     Considered as a Whole, The FAC and the July 2019 E-mails Are Susceptible of Only One Reasonable Interpretation**

Platzner argues the trial court wrongly "concluded [the e-mails] supported only one possible interpretation–namely, that the oral agreement was not . . . binding, and that there were material terms of the alleged agreement that remained under negotiation." For all the reasons we just discussed, we disagree. The FAC itself pled the material terms of the contract, and some of those material terms had not been finalized. Moreover, considering the FAC and the e-mails together as a whole and in context, they lead only to the conclusion the parties had not mutually consented to all the material terms at the time of the alleged oral agreement on July 24. (Cf. *Hudson v. County of Los Angeles* (2014) 232 Cal.App.4th 392, 410–411 ["the court erred in granting judgment on the pleadings" because there were several reasonable interpretations of the agreements at issue].) Because the FAC failed to plead an enforceable contract, the relevant causes of action were properly dismissed.

**III.     The Trial Court Did Not Err in Dismissing the SAC Without Leave to Amend the Relevant Causes of Action**

The trial court later dismissed the SAC after concluding it "[was] a sham pleading." It found "a stark inconsistency between [Platzner's] allegation in his prior complaints that the July emails 'confirmed all material terms' and the allegation in the SAC that the July emails merely confirmed some of the terms of the parties' agreement." We agree, and we conclude the dismissal was appropriate.

23

## A.     Standard of Review

While we review de novo the trial court's sustaining of a demurrer, we review for abuse of discretion the trial court's denial of leave to amend. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## B.     The Trial Court Correctly Concluded the SAC Was a Sham Pleading That Failed to State a Cause of Action

"[T]he 'sham pleading' doctrine . . . prevents the abuse of process that would arise if parties could circumvent prior adverse rulings by pleading the underlying facts in the alternative." (*Smyth, supra*, 31 Cal.App.5th at p. 195.) In that regard, a plaintiff " 'may not omit harmful allegations . . . from previous complaints' " in an amended complaint. (*Ibid.*) "Unless the plaintiff provides a 'plausible' explanation for dropping the harmful allegations (such as the need to correct a mistaken allegation or to clarify ambiguous facts), the trial court will take judicial notice of the harmful allegations and disregard the new and contrary allegations." (*Ibid.*)

Platzner argues the trial court erred in concluding two types of allegations in the SAC contradicted the FAC and original complaint: (1) "the parties had agreed that, in furtherance of [Platzner's] services, [Platzner] would move to Los Angeles and devote his time to attract[ing] capital and investment opportunities"; and (2) "the parties agreed that the [July 24 oral agreement] took immediate effect," even though the parties "expected that ancillary terms and boilerplate provisions would be included" in a written agreement to be signed at a later date.

With regard to Platzner's own obligations under the July 24 oral agreement, Platzner first argues the SAC merely clarified

24

how he would secure investment capital for the business venture "by moving to Los Angeles and devoting his time to that endeavor," and that "is fully consistent with [his] allegations in the [FAC]." But the trial court properly determined those new allegations directly contradicted both the FAC and the original complaint, which expressly alleged "all of the material terms" of the oral agreement in a bulleted list.[14] Platzner's newly minted allegations that his move to Los Angeles and his efforts to obtain investment capital were also material terms of the parties' oral agreement are "factually inconsistent" with both the original complaint and the FAC. (*Smyth*, *supra*, 31 Cal.App.5th at p. 196.) They might be consistent with the FAC if they were immaterial– but the SAC expressly alleged otherwise.[15] Platzner's repeated characterization of those contradictory allegations as merely "clarifying" does not make them so.

Platzner's argument with regard to the second new allegation, that the parties agreed that their July 24 oral agreement was enforceable even if they never entered into the contemplated long-form written agreement, is that he was not required to and did not include it in the FAC, but it was nevertheless consistent with the FAC. That is, he argues, the new allegation "expressly stated what he already implied in the

---

[14] The SAC also contradicted the original complaint and FAC in alleging the July 2019 e-mails contained "several of the terms that would govern Platzner's employment relationship (in addition to a few non-material terms)."

[15] While not pointed out by the parties, we note the FAC had also alleged "location was never a term of any agreement," reinforcing the trial court's conclusion that Platzner's new allegation was inconsistent.

[FAC]." But we fail to see how this term was implied in the FAC, particularly given that the FAC alleged the e-mail correspondence contained "all of the material terms" and "reflected the correct terms of their [July 24 oral] agreement," and yet omitted that subsequently added term. Moreover, because those judicially noticed e-mails and the FAC's allegations demonstrated the parties had merely agreed to agree, the court properly concluded no oral contract had been formed. Platzner's conclusory allegation in the SAC "that the [oral] [a]greement itself took immediate effect" cannot overcome the specific factual allegations of his prior pleadings and the judicially noticed documents. (See *Smyth*, *supra*, 31 Cal.App.5th at p. 195; see also *Doe*, *supra*, 247 Cal.App.4th at p. 960.)

C.      **The Trial Court Properly Dismissed the Relevant Causes of Action Without Leave to Amend**

"If there is a reasonable possibility that the defect in a complaint can be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend." (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 (*Hendy*).) Nevertheless, "[t]he burden is on the plaintiff . . . to demonstrate the manner in which the complaint might be amended." (*Ibid.*; see *Siskiyou Hospital, Inc. v. County of Siskiyou* (2025) 109 Cal.App.5th 14, 53–54 [to carry his burden, the plaintiff must state new facts he will allege].)

Here, while Platzner asserts the general principle that leave to amend should be granted if amendment is possible, he does not explain how he would or could amend the SAC to salvage his causes of action. He has therefore not carried his burden to demonstrate amendment is possible. (See *Hendy*,

26

*supra*, 54 Cal.3d at pp. 742–743 [the plaintiff did not meet his burden where he failed to inform trial court of factual basis for suggested amendment and failed to explain why he made a contradictory allegation in prior complaint].) The trial court did not abuse its discretion in dismissing the relevant causes of action without leave to amend.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(1)–(2).)


RICHARDSON, J.

WE CONCUR:


LUI, P. J.


CHAVEZ, J.

27